1
2
3

**LAW OFFICES OF RANDALL S. WAIER**
**Randall S. Waier, CSB 75430**
**20241 Birch Street, Suite 103**
**Newport Beach, CA  92660**
**(949) 476-2511**

4

Attorneys for Defendants Ubiquity, Inc.; Chris Carmichael; Connie Carmichael; Brenden Garrison; Henry Blessley; and Nicholas Mitsakos

5
6
7

8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

11
12
13
14

**Kay Strategies, Inc.**, a Nevada corporation, **Makaiwi & Associates, Inc.**, a Nevada corporation, **Result Corporation**, a Nevada corporation,

15

                    Plaintiffs,

16

            vs.

17
18
19
20
21
22
23
24

**Ubiquity, Inc.**, a Nevada corporation, **Chris Carmichael**, an individual, **Connie Carmichael**, an individual, **Brenden Garrison**, an individual, **Henry Blessley**, an individual, **Nicholas Mitsakos**, an individual, **Gregg E. Jacklin**, an individual, **Szaferman, Lakind, Blumstein & Blader, P.C.**, a New Jersey professional corporation,

                    Defendants.

CASE NO.  15CV2720-H-DHB

**NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF CONNIE JORDAN (CARMICHAEL) IN SUPPORT THEREOF**
**[FRCP Rule 12(b)(5) and Rule 12(b)(6)]**

Date:   February 29, 2016
Time:   10:30 a.m.
Dept.:  15A

25
26
27
28

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 29, 2016, at 10:30 a.m., or as soon thereafter as the matter may be heard, in Department 15A, before the Honorable Marilyn L. Huff, defendants Ubiquity, Inc., Chris Carmichael, Connie Jordan (Carmichael), Brenden Garrison; Henry Blessley; and Nicholas Mitsakos ("defendants") will move to dismiss the action pursuant to FRCP Rule 12(b)(5) because the summons and complaint were improperly served, and pursuant to FRCP Rule 12(b)(6), because plaintiffs' complaint fails to state any claim upon relief can be granted, on the ground that plaintiffs expressly released defendants from any liability under these claims.

This motion will be based on this Notice of Motion and Motion, the accompany Memorandum of Points and Authorities, the pleadings and papers filed herein, and the supporting declaration of Connie Jordan (Carmichael).

Dated:   January 28, 2016          **LAW OFFICES OF RANDALL S. WAIER**


By:  _/s/Randall S. Waier_
     Randall S. Waier
     Attorneys for Defendants Ubiquity, Inc.; Chris
     Carmichael; Connie Carmichael; Brenden
     Garrison; Henry Blessley; and Nicholas
     Mitsakos
     E-mail:  admin@waier.com

---

NOTICE OF MOTION AND MOTION TO DISMISS [FRCP Rule 12(b)(5) and Rule 12(b)(6)] - 2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

I.      Introduction ............................................................    1

II.     Discussion ............................................................    8

        Rule 12(b)(5) Motion To Dismiss ........................................    8

        Rule 12(b)(6) Motion To Dismiss ........................................    10

III.    Conclusion ............................................................    13

1

**TABLE OF AUTHORITIES**

2

*Cases*                                                                                    *Page(s)*

3

4

*Ayres v. Jacobs & Crumplar, P.A.*
(3rd Cir. 1996) 99 F.3d 565 ................................................................  10

5

6

*Branch v. Tunnell*
(9th Cir. 1994) 14 F.3d 449 ...............................................................  4, 11

7

8

*Collins v. Morgan Stanely Dean Witter*
(5th Cir. 2000) 224 F.3d 496 ............................................................  4

9

10

*FDIC v. Mt. Vernon Ranch, Inc.*
(WD MO 1988) 118 FRD 496 .........................................................  9

11

12

*Quiller v. Barclays American/Credit, Inc.*
(11th Cir. 1984) 727 F.2d 1067 ........................................................  10

13

14

*Weisbuch v. County of Los Angeles*
(9th Cir. 1997) 119 F.3d 778 ............................................................  10

15

16

*Statutes*                                                                                 *Page(s)*

17

18

California *Civil Code* § 1691(b) ........................................................  12

19

California *Code of Civil Procedure* § 415.10 ..................................  9

20

California *Code of Civil Procedure* § 415.20 ..................................  8, 9

21

22

California *Code of Civil Procedure* § 415.20(a) .............................  8

23

California *Code of Civil Procedure* § 415.30 ..................................  9

24

25

California *Code of Civil Procedure* § 415.50 ..................................  9

26

California *Code of Civil Procedure* § 416.20 ..................................  9

27

California *Commercial Code* § 8401 ...............................................  1

28

# TABLE OF AUTHORITIES
## (Continued)

*Statutes*                                                                                  *Page(s)*

California *Corporations Code* § 25401 ..........................................  8

FRCP Rule 4(e)(2)...........................................................................  8, 9

FRCP Rule 4(h)(1) .........................................................................  9

FRCP Rule 12(b)(5) ........................................................................  8, 10, 13

FRCP Rule 12(b)(6) ........................................................................  4, 10, 11, 13

Securities & Exchange Commission Rule 10b-5.............................  1, 7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

**I.      *Introduction*.**

3

4            Kay Strategies, Inc., Makaiwi & Associates, Inc., JTS Investments, Inc. and

5    Result Corporation collectively have sued Ubiquity, Inc., Chris Carmichael, Connie

6    Carmichael, Brenden Garrison, Henry Blessley, Micholas Mitsakos, Gregg E.

7

8    Jacklin, and Szaferman, Lakind, Blumstein & Blader, P.C. for various violations of

9    federal and California securities laws, including Section 10(b) of the Securities &

10   Exchange Act of 1934, and Securities & Exchange Commission Rule 10b-5.

11

12   Tethered to these claims are California Commercial Code and common law tort

13   theories of recovery, namely California *Commercial Code* § 8401, fraud, negligent

14

15   misrepresentation, breach of fiduciary duty and legal malpractice.

16            As alleged in the complaint, the salient facts are:

17

18            •       Ubiquity, on March 5, 2013, merged with Fermo Group, Inc.,

19   which was a publicly traded company, and that Ubiquity thereafter engaged in a

20   pyramid scheme "to manipulate the market and receive personal gain through

21

22   securities fraud."[1]  [Complaint ("Comp."), ¶ 18]

23

24

25   _____

[1]      Ubiquity, and the other defendants do not understand why this allegation is
26   included in the complaint.  This is not a class action for securities fraud as alleged.
     Furthermore, other allegations dealing with other alleged non-descript pyramid
27   schemes and "pump and dump" circumstances have no relevance to any of the
     personal claims of relief of the plaintiffs.
28

- To accomplish this alleged pyramid scheme, defendants allegedly made material misrepresentations "regarding the operation of" Ubiquity to "unknowing investors" that, if purchased, they could "sell UBIQ stock in the public markets." [Comp., ¶ 27]

- Defendants also allegedly made "material misrepresentations to "unknowing investors" that they would file paperwork ("8a12g") to become an obligatory reporting company under the Securities Act of 1934," which they did not do. [Comp., ¶ 29]

- Defendants "intentionally" did not file "SEC required documents" in an effort to restrict investors "from using Rule 144 exemption, which requires that [Ubiquity] to be current in SEC filings." [Comp., ¶ 32]

- Sea Coast Advisors, Inc., which is *not* a party, through "its officer, Troy Flowers," *in early 2014*, "presented an investment opportunity to [p]laintiffs to purchase Ubiquity stock. Sea Coast owns "10% or more of" Ubiquity. The investment opportunity "included the purchase of shares … not … registered with the SEC." [Comp., ¶ 41]

- In early June 2014, Robert Wheat, *plaintiffs' "representative*," was informed orally by Mr. Flowers that "if the [p]laintiff's [sic] purchased the UBIQ shares, … UBIQ would guarantee that the restriction on the shares would be lifted by September 27, 2014," by providing "a Rule 144 Legal Opinion to remove

the restrictive trading legend [on the share certificates] by" that date, and "would re-issue "legend free" certificates.  [Comp., ¶ 44]

- Mr. Wheat also was orally advised by an attorney, defendant Gregg S. Jacklin "that UBIQ would be making SEC filings to become an obligating reporting company, … and would be uplisted to the NASDAQ exchange."  [Comp., ¶ 46]

- Allegedly predicated on these verbal representations, plaintiffs "purchased UBIQ shares *through a private stock transaction*."  [Complaint, ¶ 47]

- Ubiquity, however, failed "to *timely* provide the Legal Opinion Letters," instead "the Legal Opinion Letters were provided many months" thereafter.  [Comp., ¶ 50]

- Allegedly, plaintiffs also presented their "certificated securities in registered form to UBIQ with a request to register the securities without a restrictive legend on or before October 2, 2014," which "UBIQ refused."  [Comp., ¶ 54]

- On November 18, 2014, Messrs. Chris Carmichael and Brenden Garrison allegedly verbalized to Mr. Wheat that Ubiquity "would not free up the stocks unless [p]laintiffs invested additional capital into UBIQ."  [The complaint is silent as to whether plaintiffs succumbed to this alleged verbalization and invested additional capital in UBIQ.] [Comp., ¶ 57]

1
2
3
4
5

- On February 25, 2015, [p]laintiffs and UBIQ entered into two confidential settlement agreements, "both of which have been rescinded."  The first settlement agreement allegedly was rescinded, by written notice *on July 1, 2015*. [Comp., ¶ 61]

6
7
8
9
10
11
12
13
14
15
16
17

- "[P]laintiffs and UBIQ entered into a second settlement agreement dated July 3, 2015, which superseded the first settlement agreement," and that on *October 21, 2015*, "[p]laintiffs provided written notice of rescission of" the second settlement agreement.  [The October 21, 2015 rescission notice is not attached to the complaint, *and there is no allegation that plaintiffs offered to restore the consideration they received, namely "600,000 fully paid and non-assessable" Ubiquity shares, as initially legend*.  Rather plaintiffs concede they sold the stocks, *albeit* for an alleged loss.  *Comp.*, § 59]

18
19
20

- Plaintiffs did not append either of the two settlement agreements to their complaint.[2]

21
22
23
24
25
26
27
28

---

[2]     Though plaintiffs are not required to attach documents on which they rely upon, defendants are entitled, in initiating a Rule 12(b)(6) motion, to attached and refer to such documents to rebut plaintiff's claims.  See, i.e. *Branch v. Tunnell* (9th Cir. 1994) 14 F.3d 449, 454.  This Court may consider the full text of a document, if the complaint refers to the document, the document is central to plaintiffs' claim, and, no party questions the authenticity of the document attached to the Rule 12(b)(6) motion.  *Collins v. Morgan Stanley Dean Witter* (5th Cir. 2000) 224 F.3d 496, 498-499.  Here, Ubiquity has appended the July 3, 2015 referred and executed comprehensive settlement agreement between Ubiquity and plaintiffs; the authenticity of which cannot be challenged.

- The second settlement agreement, *dated July 3, 2015*, expresses that defendants agreed to accept "600,000 fully paid and non-assessable shares" of Ubiquity's common stock "as settlement of all claims related to the Rule 144 Sales and Purchase Agreements." Those shares would be "initially issued with [a] legend," and that Ubiquity would provide an opinion letter "that the [s]hares are exempt under Rule 144 provided that the [defendants] provide … with all required documents to issue the Rule 144 opinion in a timely manner." Those shares were issued to plaintiffs. [*Jordan* Dec., ¶ 3]

- The July 3rd settlement agreement contained a comprehensive release:

> "2.    The *Shareholders*, on behalf of themselves, their predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, companies under common control with any of the foregoing, affiliates and assigns, and its and their past, present, and future officers, directors, shareholders, interest holders, members, partners, attorneys, agents, employees, managers, representatives, assigns, and successors in interest, and all persons acting by, through, under, or in concert with them, and each of them, *hereby release and discharge the Company, together with its predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, companies under common control with any of the foregoing, affiliates and assigns and its and their past, present, and future officers, directors, shareholders, interest holders, members, partners, attorneys, agents, employees, managers, representatives, assigns and successors in interest, and all person acting by, through, under or in concert with them, and each of them, from all known and unknown charges, complaints, claims, grievances, liabilities, obligations, promises, agreements,*

1
2
3
4
5
6
7

*controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, penalties, fees, wages, medical costs, pain and suffering, mental anguish, emotional distress, expenses* (including attorneys' fees and costs actually incurred), and punitive damages, of any nature whatsoever, known or unknown, which either party has, or may have had, against the other party, whether or not apparent or yet to be discovered, or which may hereafter develop, for any acts or omissions, arising from or related to the Rule 144 Sales and the Purchase Agreements.

* * *

8
9
10
11
12
13
14
15
16
17

4.      Subject to paragraph 1, this Agreement resolves any claim for relief that could have been alleged by the Shareholders, no matter how characterized, including, without limitation, compensatory damages, damages for breach of contract, bad faith damages, reliance damages, liquidated damages, punitive damages, costs and attorneys fees against Company arising from or related to Rule 144 Sales and the Purchase Agreements.  Notwithstanding the foregoing, if either the Company or the Shareholders engage in any illegal actions(s) with respect to the execution of the terms of this Agreement before the entire amount set forth in Paragraph 1 is issued to the Shareholders, then the other party is entitled to make a claim for relief with respect to such illegal actions(s)."

18
19
20

•      The settlement agreement also expressed a confidentiality provision:

21
22
23
24
25
26
27
28

"7.      The Parties shall keep the terms of this Agreement strictly confidential and agree not to disclose to any other person or entity the terms of this Agreement, except that the Parties may disclose the terms of this Settlement Agreement (a) their attorneys, accountants, auditors, financial advisors, and/or insurers, who shall be required to maintain and honor the confidentiality of such information; and (b) the extent required for tax returns and related documents.  *The terms of this Settlement Agreement may be disclosed in any legal proceeding concerning the enforcement of the Settlement Agreement, provided that the party seeking to disclose it seeks a protective*

*order requiring that the terms of the Settlement Agreement be maintained as strictly confidential, the intent being to preserve the strict confidentiality of this Settlement Agreement to the maximum extent possible.*  In the event that a Party, or other person or entity in possession of this agreement or having knowledge of some or all of its terms, receives a valid subpoena, or is otherwise ordered by a Court or tribunal, to disclose any of the terms of this Agreement, the Party or other person agrees to notify all Parties in writing at least five (5) days in advance of the disclosure to afford the other Parties an opportunity to prevent or limit the disclosure or otherwise seek to maintain the strict confidentiality of the terms of this Agreement."

- The settlement agreement contemplated an enforcement action, also requiring Ubiquity to abide by "the provisions of applicable securities lows in the disposition of any [s]hares … acquired" in accordance therein.  The second settlement agreement only allowed the parties "to make a claim for relief with respect to … any illegal action[s] with respect to execution of the [settlement terms]."  [Plaintiffs did not seek a protective order before disclosing some of the settlement terms in its complaint.]

- The second settlement agreement "resolved any claim for relief that *could have been alleged* …, no matter how characterized, … arising from or related to [the] Rule 144 Sales and Purchase Agreements."

In the first count, plaintiffs aver that Ubiquity violated Section 10(b) of the Exchange Act and Rule 10b-5, arising out of the Rule 144 Sales and Purchase Agreements.  The second claim for relief also stems from the Rule 144 Sales and

Purchase Agreements.  The third count for violation of California *Corporations Code* § 25401 again originates from the Rule 144 Sales and Purchase Agreements. Likewise, the fourth through ninth claims for relief all revolve around or are "related to the Rule 144 Sales and Purchase Agreements."

Finally, the summons and pending complaint were not personally served on any defendant.  FRCP Rule 4(e)(2).  Rather, the summons and pending complaint were served by someone [unidentified] leaving copies thereof on the reception desk at Ubiquity's corporate offices in Irvine, California.  [*Jordan* dec., ¶ 2]  No other method of service was used.  None of the defendants were personally served, or were the summons and complaint mailed to each of the defendants as required by California *Code of Civil Procedure* § 415.20, one of the requirements for substitute service.  Nor was any personal service of the summons and complaint attempted beforehand on any of the individual defendants.  See, California *Code of Civil Procedure* § 415.20(a).  As to Ubiquity, the summons and complaint was not served on an "agent authorized by appointment or by law to receive service of process." FRCP Rule 4(e)(2).  [*Jordan* dec., ¶ 2]

## II.   *Discussion.*

### *Rule 12(b)(5) Motion To Dismiss*

The summons and pending complaint have not been properly served on any of the defendants.

As to both individual and business entity defendants, service must be accomplished by either:

- Personal delivery to the defendant or authorized agent [Cal. Civ. Pro. Code § 415.10];

- Substitute service to someone else at defendants' residence or place of business [Cal. Civ. Pro. Code § 415.20];

- Mail service coupled with acknowledgment of receipt [Cal. Civ. Pro. Code § 415.30]; and

- Service by publication [Cal. Civ. Pro. Code § 415.50].

With respect to personal service, process cannot be left with another to deliver to the defendant.  See *FDIC v. Mt. Vernon Ranch, Inc.* (WD MO 1988) 118 FRD 496, 500.  As to substitute service on individual defendants, delivery of process may be had by leaving copies at defendant's "dwelling house or usual place of abode with some person of suitable age and discretion then residing therein." [FRCP 4(e)(2)]  Regarding business entities, a corporation can be served by delivering copies of the summons and complaint *to an authorized corporate officer to receive service of process; or the person designated by the corporation as its statutory agent for service; or the Secretary of State (upon court order authorizing same)*.  [See Cal. Civ. Pro. Code § 416.20; and FRCP 4(h)(1).]  Delivery of the

summons and complaint to a firm's office manager for example, is *not* effective

service.  A*yres v. Jacobs & Crumplar, P.A.* (3rd Cir. 1996) 99 F.3d 565, 567.

Here, none of these authorized methods of service were accomplished.  The

only method used was leaving copies of the summons and complaint at an

unattended reception desk.  Accordingly, this Court should either quash the service

or dismiss according to FRCP 12(b)(5).

### *Rule 12(b)(6) Motion To Dismiss*

In plaintiffs' complaint, they refer to confidential settlement agreements, the

latest of which was entered into on October 21, 2015, but dated July 3, 2015.

Plaintiffs however do not annex these settlement agreements to their complaint.

The second settlement agreement is unambiguous, and contains express provisos

releasing "any claim for relief," "no matter how characterized," "arising from or

*related to*" the "Rule 144 Sales and Purchase Agreements."

A Rule 12(b)(6) dismissal motion may be employed when a plaintiff has

included allegations disclosing absolute defenses or bar to recovery.  See, *Weisbuch

v. County of Los Angeles* (9th Cir. 1997) 119 F.3d 778, 783, fn. 1; and *Quiller v.

Barclays American/Credit, Inc.* (11th Cir. 1984) 727 F.2d 1067, 1069.

Here, the July 3, 2015 settlement and release agreement referenced in ¶ 61 of

the pending complaint unveils an absolute defense to plaintiffs' complaint, namely

that all of plaintiffs' claims for relief, which arise from or relate to the Rule 144

Sales and Purchase Agreements, are barred by the release provisions therein.  Rule 12(b)(6) allows the Court to consider documents not physically attached to the complaint if:

- The complaint refers to such document;

- The document is central to plaintiffs' claims; and

- No party questions the authenticity of the copy attached to the 12(b)(6) motion.  See, *Branch v. Tunnell* (9th Cir. 1994) 14 F.3d 449, 454.  All of these conditions have been met for the Court here to consider the release provisos in the July 3, 2015 settlement and release agreement in ruling on defendants' Rule 12(b)(6) motion.

That being said, the July 3rd settlement and release agreement unquestionably released the defendants from liability for any of the claims of relief in plaintiffs' complaint.  All of defendants' misconduct alleged in the complaint, leading to plaintiffs' alleged damages, revolve around or are related to the 2014 "Rule 144 Sale and Purchase Agreements," which plaintiffs contend they were duped into executing by material misrepresentations, and *which occurred prior to the July 3rd settlement agreement*.  Boiled down to its barest, plaintiffs allege that defendants conspired together to engage in a pyramid scheme in June 2014, by making material representations to them or their agents, which induced them to purchase Ubiquity shares through a private stock transaction.  [Comp., ¶ 47]  Accordingly, by the

express terms of the July 3rd settlement and release agreement, plaintiffs compromised and released all known and unknown claims of relief "arising from or related to the Rule 144 Sales and the Purchase Agreements," – the "private stock transaction."  In the settlement and release agreement, plaintiffs also acknowledged "that the issuance of the Shares was agreed upon as a compromise and final settlement of disputed claims."  [*Jordan* dec., ¶ 3, Ex. "1," ¶ 6]  In their complaint, plaintiffs admit receiving the shares, and that they sold the shares.[3]  The Court therefore should dismiss the action, since all of plaintiffs' claims for relief were released, by the unambiguous expressions in the settlement agreement.

///

///

///

///

///

---

[3]     In their complaint, plaintiffs contend that they unilaterally rescinded this settlement agreement, by some written, and unattached notification.  [Comp., ¶ 59]  However, plaintiffs concede in their pleading they resold the very consideration, namely the issuance of the shares, called for in the settlement and release agreement.  To effect a rescission, a party to a contract must '[r]estore to the other party everything of value which he has received from him under the contract."  California *Civil Code* § 1691(b).  Therefore, plaintiffs allegation of unilateral rescission is of no moment since they admit they sold the shares, and thus cannot restore this consideration to Ubiqutiy.

1

### III.   *Conclusion.*

2

Under either Rule 12(b)(5) or Rule 12(b)(6) this Court should dismiss

3

plaintiffs' entire action.

4

5

Dated:   January 28, 2016          **LAW OFFICES OF RANDALL S. WAIER**

6

7

By:  *<u>/s/Randall S. Waier</u>*
            Randall S. Waier

8

            Attorneys for Defendants Ubiquity, Inc.; Chris

9

            Carmichael; Connie Carmichael; Brenden
            Garrison; Henry Blessley; and Nicholas

10

            Mitsakos

11

            E-mail:  admin@waier.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2

3      I hereby certify that counsel of record for the Plaintiff's are being served with

4  a copy of this document via electronic mail on this 28th day of January, 2016.

5

6

7                                    */s/ Randall S. Waier*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28