**LAW OFFICES OF RANDALL S. WAIER**
Randall S. Waier, CSB 75430
20241 Birch Street, Suite 103
Newport Beach, CA  92660
(949) 476-2511

Attorneys for Defendants Ubiquity, Inc.; Chris Carmichael; Connie Carmichael; Brenden Garrison; Henry Blessley; and Nicholas Mitsakos

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Kay Strategies, Inc.**, a Nevada corporation, **Makaiwi & Associates, Inc.**, a Nevada corporation, **Result Corporation**, a Nevada corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>**Ubiquity, Inc.**, a Nevada corporation, **Chris Carmichael**, an individual, **Connie Carmichael**, an individual, **Brenden Garrison**, an individual, **Henry Blessley**, an individual, **Nicholas Mitsakos**, an individual, **Gregg E. Jacklin**, an individual, **Szaferman, Lakind, Blumstein & Blader, P.C.**, a New Jersey professional corporation,<br><br>Defendants. | CASE NO.  15CV2720-H-DHB<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF CONNIE JORDAN (CARMICHAEL) IN SUPPORT THEREOF**<br>**[FRCP Rule 12(b)(6) and Rule 9(b)]**<br><br>Date:    March 28, 2016<br>Time:    10:30 a.m.<br>Dept.:   15A |

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 28, 2016, at 10:30 a.m., or as soon thereafter as the matter may be heard, in Department 15A, before the Honorable Marilyn L. Huff, defendants Ubiquity, Inc., Chris Carmichael, Connie Jordan (Carmichael), Brenden Garrison; Henry Blessley; and Nicholas Mitsakos (together, the "Ubiquity defendants") will move to dismiss the action pursuant to FRCP Rule 12(b)(6) and 9(b), because plaintiffs' complaint as a whole, fails to state any claim upon relief can be granted.

This dismissal motion is predicated on the following:

(i)  Plaintiffs expressly released defendants from any liability under their statutory and common law tort claims;

(ii)  The first, second, third, fourth, fifth, sixth, seventh, eighth, and ninth claims for relief (violation of 10(b)/10b-5, violation of California *Corporations Code* § 25403, common-law fraud, conspiracy to commit fraud, and negligent misrepresentation, respectively) are not alleged with the heightened pleading standard of "particularity" required in statutory and common law fraud and related claims of relief [i.e. there are no allegations that the attorney defendants were authorized by the Ubiquity defendants to make the alleged misrepresentations], and,

1   (iii)  The first, second, third, fourth, fifth, sixth, seventh, eighth and ninth

2   claims for relief, aver facts which made it impossible for the future predicted events

3   from happening, making reliance on the alleged statements unreasonable.

4   

5   This motion will be based on this Notice of Motion and Motion, the

6   accompany Memorandum of Points and Authorities, the pleadings and papers filed

7   herein, and the supporting declaration of Connie Jordan (Carmichael).

8   

9   Dated:   February 29, 2016        **LAW OFFICES OF RANDALL S. WAIER**

10  

11                                    By:  _/s/Randall S. Waier_

12                                         Randall S. Waier

13                                         Attorneys for Defendants Ubiquity, Inc.; Chris
                                            Carmichael; Connie Carmichael; Brenden

14                                         Garrison; Henry Blessley; and Nicholas
                                            Mitsakos

15                                         E-mail:  admin@waier.com

16  

17  

18  

19  

20  

21  

22  

23  

24  

25  

26  

27  

28

# TABLE OF CONTENTS

**Page**

I.    Introduction ............................................................................   1

II.   Discussion ..............................................................................   10

    A. All Of Plaintiffs' Cliams For Relief Against The
       Ubiquity Defendants Were Released ...............................   10

    B. Plaintiffs Have Not Alleged With Particularity Any
       Securities Fraud And Related Claims Against The
       Ubiquity Defendants, Sufficient To Withstand A Rule
       12(b)(6) Motion ...................................................................   13

III.  Conclusion .............................................................................   21

# TABLE OF AUTHORITIES

1

2

*Cases*                                                                                    *Page(s)*

3

4

*Ackerman v. Northwestern Mut. Life Ins. Co.*
(7th Cir. 1999) 172 F.3d 467.................................................................  15

5

6

*Branch v. Tunnell*
(9th Cir. 1994) 14 F.3d 449..................................................................  6, 11

7

8

*Coastes v. Heartland Wireless Communications, Inc.*
(ND TX 1998) 26 F.Supp.2d 910........................................................  17

9

10

*Collins v. Morgan Stanely Dean Witter*
(5th Cir. 2000) 224 F.3d 496................................................................  7

11

12

*Concha v. London*
(9th Cir. 1995) 62 F.3d 1493................................................................  15

13

14

*Desaigoudar v. Meyercord*
(9th Cir. 2000) 223 F.3d 1020..............................................................  15

15

16

*Hayduk v. Lanna*
(1st Cir. 1985) 775 F2d 441 ................................................................  16

17

18

*In re Advanth Corp. Secur. Litig.*
(3rd Cir. 1999) 180 F.3d 525 ...............................................................  17

19

20

*In re Equity Funding Corp. of America Sec. Litig.*
(CD CA 1976) 416 F.Supp. 161 ..........................................................  16

21

22

*In re Glen Fed, Inc. Secur. Litig.*
(9th Cir. 1994) 42 F.3d 1541................................................................  16

23

24

*In re Silicon Graphics Inc. Secur. Litig.*
(9th Cir. 1999) 183 F.3d 970................................................................  17

25

26

*Moore v. Kayport Package Express, Inc.*
(9th Cir. 1989) 885 F.2d 531................................................................  15

27

28

# TABLE OF AUTHORITIES
## (Continued)

*New England Data Services, Inc. v. Becker*
(1st Cir. 1987) 829 F.2d 286 .............................................................  16

*Quiller v. Barclays American/Credit, Inc.*
(11th Cir. 1984) 727 F.2d 1067 ........................................................  10

*Roberts v. Francis*
(8th Cir. 1997) 128 F.3d 647.............................................................  16

*Small v. Fritz Cos.*
(2003) 30 Cal.4th 167 .......................................................................  12

*Tarmann v. State Farm Mut. Auto Ins. Co.*
(1991) 2 Cal.App.4th 153 .................................................................  12

*Weisbuch v. County of Los Angeles*
(9th Cir. 1997) 119 F.3d 778.............................................................  10

*Wool v. Tandem Computers, Inc.*
(9th Cir. 1987) 818 F.2d 1433...........................................................  16

**Statutes**                                                            **Page(s)**

California *Civil Code* § 1542 ..........................................................   6

California *Civil Code* § 1691(b) .....................................................  13

California *Commercial Code* § 8401...............................................   1

**Statutes**                                                            **Page(s)**

FRCP Rule 12(b)(6) ............................................................  1,6,10,11,13,20,21

Securities & Exchange Commission Rule 10b-5............................  1, 2, 16

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    *Introduction*.

Kay Strategies, Inc., Makaiwi & Associates, Inc., JTS Investments, Inc. and Result Corporation collectively have sued Ubiquity, Inc., Chris Carmichael, Connie Carmichael, Brenden Garrison, Henry Blessley, and Nicholas Mitsakos (the "Ubiquity defendants"), for various violations of federal and California securities laws, including Section 10(b) of the Securities & Exchange Act of 1934, and Securities & Exchange Commission Rule 10b-5.  Tethered to these claims are California Commercial Code and common law tort theories of recovery, namely California *Commercial Code* § 8401, fraud, negligent misrepresentation, and breach of fiduciary duty.

Boiled down to its barest, the amended complaint, almost entirely in conclusionary fashion, alleges:

- Ubiquity, on March 5, 2013, entered into a reverse merger with Fermo Group, Inc., which was a publicly traded company.  Ubiquity thereafter engaged in a pyramid scheme "to manipulate the market and receive personal gain through securities fraud."[1]  [*Amended Complaint* ("*AC*"), ¶ 18]

---

[1]    The Ubiquity defendants do not understand why this allegation is included in the amended complaint.  This is not a class action for securities fraud as alleged.  Furthermore, other allegations dealing with other alleged non-descript "pyramid schemes" and "pump and dump" transactions have *no* relevance to any of the

1

2

3

4

5

6

7

8

9

10

11

- To accomplish this alleged "pyramid scheme," defendants, *in 2013*, [without names] allegedly made unrelated material misrepresentations "regarding the operations of" Ubiquity to "*unknowing investors*" to "entice" them to purchase UBIQ securities, *including plaintiffs*," and that *they* [ again non-descript "defendants"] could remove the restrictive legends on their stock certificates, which would allow then to deposit and free up their restricted UBIQ stocks by a certain date and sell their unregistered securities in the public market through a Rule 144 exemption."  [*AC*, ¶ 27, 28]

12

13

14

15

16

17

- Defendants [once again, not named] also allegedly made "material misrepresentations to "*unknowing investors*" that they would file paperwork ("8a12g") to become an obligatory reporting company under the Securities Act of 1934," which they did not do.  [*AC*, ¶ 29]

18

19

20

21

22

23

24

25

- Defendants [once again, not identified] "intentionally" did not file "SEC required documents" in an effort to restrict investors "from using Rule 144 exemption, which requires that [Ubiquity] to be current in SEC filings," without alleging when such non-filing happened.  [*AC*, ¶ 32]

26

_____

27

28

personal and tort claims of relief of the plaintiffs.  These allegations obviously are purposed to attempt to vilify, unjustly, all the defendants, "on information and belief."

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- *Kavame Holdings, Inc.* ("*Kavame*"), which is *an unrelated third party*, and not alleged to be an affiliate, subsidiary, or agent of Ubiquity, *in early 2014*, "presented an investment opportunity to [p]laintiffs to purchase [Ubiquity] stock from Kavame and Sea Coast Advisors, Inc."[2]  "Kavame previously purchased UBIQ stock from Sea Coast."  Sea Coast owns "10% or more of" Ubiquity, and allegedly was "an adviser" to Ubiquity.  The investment opportunity "included the purchase of shares … not … registered with the SEC."  [*AC*, ¶ 41]  The offered stock shares bore a legend restricting the sale of the shares in the public markets under Rule 144 of the Securities Act of 1933.  [*AC*, ¶ 43]

- *In early June 2014*, Robert Wheat, *plaintiffs' "representative,"* was informed orally by Troy Flowers ("Flowers"), allegedly an officer of Sea Coast, that "if the [p]laintiffs [sic] purchased the UBIQ shares, … UBIQ would guarantee that the restriction on the shares would be lifted by September 27, 2014," by providing "a Rule 144 Legal Opinion to remove the restrictive trading legend [on the share certificates] by" that date, "would re-issue "legend free" certificates, and that "the shares would be eligible to trade under Rule 144 by September 27, 2014."  [*AC*, ¶ 42, 43]  There are *no* allegations that Mr. Flowers is either an officer,

---

[2]   As alleged, this was a third-party *private* stock transactions, not involving Ubiquity.

1
2
3
4

director, employee or agent of Ubiquity, nor of Mr. Flowers authority to make any representations on Ubiquity's behalf.  There are *no* allegations that Ubiquity ratified Mr. Flowers' conduct.

5
6
7
8
9
10
11

• Mr. Wheat also was orally advised telephonically by an attorney, defendant Gregg S. Jacklin ("Jacklin") "that UBIQ would be making SEC filings to become an obligating reporting company, … and would be uplisted to the NASDAQ exchange."  [*AC*, ¶ 46]  There are *no* allegations that Mr. Jacklin was authorized by Ubiquity to make any representations on its behalf.[3]

12
13
14
15
16
17
18
19
20
21
22
23
24

• Predicated supposedly on these *telephonic* representations, plaintiffs "purchased UBIQ shares *through private stock transactions,*" *from Kavame*.  [*AC*, ¶ 45, 47]  Plaintiffs do not identify the date when these shares were purchased, or the consideration paid.  Once again, plaintiffs do not allege facts establishing Mr. Jacklin's authorization to make any statements on Ubiquity's behalf, only allegations that Mr. Jacklin had acted as Ubiquity's counsel in the past. There are *no* allegations, as required by FRCP Rule 9(b), whereby Mr. Jacklin represented to plaintiffs that he was only acting as the spokesperson for Ubiquity.

25
26
27
28

---

[3]     Furthermore, it would not be plausible that Mr. Jacklin would be acting on behalf of the Ubiquity defendants, since, as plaintiffs allege, they had "no skin" in the transaction.  This was a "private stock transaction between *Kavame* and the plaintiff's.  There are *no* averments explaining how Ubiquity was benefited by this private transaction.

- On *October 2, 2014*, plaintiffs each provided documents necessary for the opinion letters and the registration of the shares without the restrictive legend, and plaintiffs also presented their "certificated securities in registered form to UBIQ with a request to register the securities without a restrictive legend on or before October 2, 2014," which "UBIQ refused." [*AC*, ¶ 54, 55] Though plaintiffs allege that *Mr. Flowers* advised them that "UBIQ would guarantee that 'the restriction of the shares,' if purchased by plaintiffs from *Kavame*" "would be lifted by September 27, 2014," such restrictions, by plaintiffs own conduct of untimely providing the necessary opinion letter documentation on October 2, 2014, obviously could *not* be "lifted" prior to that date.

- Mr. Jacklin and his firm however failed "to *timely* provide the Legal Opinion Letters," instead "the Legal Opinion Letters were provided many months" thereafter. [*AC*, ¶ 50]

- On *November 18, 2014*, plaintiffs allege their first conversation with anyone of authority at Ubiquity. Messrs. Chris Carmichael and Brenden Garrison allegedly verbalized to Mr. Wheat that Ubiquity "would not free up the stock unless [p]laintiffs invested additional capital into UBIQ." [First, this has not been identified by plaintiffs as an actionable misrepresentation inducing them to purchase *Kavame's* unregistered stock. Second, *the amended complaint is silent as to whether plaintiffs' succumbed to this alleged verbalization and invested*

1    *additional capital in UBIQ*, or how they were damaged by this dangling

2    verbalization.]  [*AC*, ¶ 57]

3
4          • On *February 25, 2015*, [p]laintiffs and UBIQ entered into two

5    confidential settlement agreements, "both of which have been rescinded."  The first

6    settlement agreement allegedly was rescinded, by written notice *on July 1, 2015*.

7
8    [*AC*, ¶ 61]

9          • "[P]laintiffs and UBIQ entered into the second settlement

10   agreement, *which was dated July 3, 2015*, and superseded the first settlement

11

12   agreement." On *October 21, 2015*, "[p]laintiffs provided written notice of rescission

13   of" the second settlement agreement.  [*The October 21, 2015 rescission notice is*

14

15   *not attached to the amended complaint, and there is no allegation that plaintiffs*

16   *offered to restore the consideration they received, namely "600,000 fully paid and*

17

18   *non-assessable" Ubiquity shares, as initially legended*.  Nor do plaintiffs aver that

19   they did not receive this consideration for their general and California *Civil Code* §

20

21   1542 release of all claims, known or unknown]  [*AC*, ¶¶ 59, 61]

22          • Plaintiffs did not append either of the two settlement agreements

23   to their amended complaint.[4]

24

25   _____

26   [4]    Though plaintiffs are not required to attach documents on which they rely
27   upon, defendants are entitled, in initiating a Rule 12(b)(6) motion, to attach and
     refer to such documents to rebut plaintiff's claims.  See, i.e. *Branch v. Tunnell* (9th
28   Cir. 1994) 14 F.3d 449, 454.  This Court may consider the full text of a document,

- The second settlement agreement, *dated July 3, 2015*, expresses that defendants agreed to accept "600,000 fully paid and non-assessable shares" of Ubiquity's common stock "as settlement of all claims related to the Rule 144 Sales and Purchase Agreements." Those shares would be "initially issued with [a] legend," and that Ubiquity would provide an opinion letter "that the [s]hares are exempt under Rule 144 provided that the [defendants] provide … with all required documents to issue the Rule 144 opinion in a timely manner." Those shares were issued to plaintiffs.  [*Jordan* Dec., ¶ 3]

- The July 3rd settlement agreement contained a comprehensive release:

> "2.    The *Shareholders*, on behalf of themselves, their predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, companies under common control with any of the foregoing, affiliates and assigns, and its and their past, present, and future officers, directors, shareholders, interest holders, members, partners, attorneys, agents, employees, managers, representatives, assigns, and successors in interest, and all persons acting by, through, under, or in concert with them, and each of them, *hereby release and discharge the Company, together with its predecessors, successors, direct and indirect parent companies,*

---

if the complaint refers to the document, the document is central to plaintiffs' claim, and, no party questions the authenticity of the document attached to the Rule 12(b)(6) motion.  *Collins v. Morgan Stanley Dean Witter* (5th Cir. 2000) 224 F.3d 496, 498-499.  Here, Ubiquity has appended the July 3, 2015 executed comprehensive settlement agreement between Ubiquity and plaintiffs referred to; the authenticity of which cannot be challenged.  This settlement agreement is central to one of Ubiquity's defenses to plaintiff's frivolous securities fraud claims.

*direct and indirect subsidiary companies, companies under common control with any of the foregoing, affiliates and assigns and its and their past, present, and future officers, directors, shareholders, interest holders, members, partners, attorneys, agents, employees, managers, representatives, assigns and successors in interest, and all person acting by, through, under or in concert with them, and each of them, from all known and unknown charges, complaints, claims, grievances, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, penalties, fees, wages, medical costs, pain and suffering, mental anguish, emotional distress, expenses* (including attorneys' fees and costs actually incurred), and punitive damages, of any nature whatsoever, known or unknown, which either party has, or may have had, against the other party, whether or not apparent or yet to be discovered, or which may hereafter develop, for any acts or omissions, arising from or related to the Rule 144 Sales and the Purchase Agreements.

\* \* \*

4.      Subject to paragraph 1, this Agreement resolves any claim for relief that could have been alleged by the Shareholders, no matter how characterized, including, without limitation, compensatory damages, damages for breach of contract, bad faith damages, reliance damages, liquidated damages, punitive damages, costs and attorneys fees against Company arising from or related to Rule 144 Sales and the Purchase Agreements.  Notwithstanding the foregoing, if either the Company or the Shareholders engage in any illegal actions(s) with respect to the execution of the terms of this Agreement before the entire amount set forth in Paragraph 1 is issued to the Shareholders, then the other party is entitled to make a claim for relief with respect to such illegal actions(s)."

•        The settlement agreement also expressed a confidentiality provision:

"7.      The Parties shall keep the terms of this Agreement strictly confidential and agree not to disclose to any other

person or entity the terms of this Agreement, except that the Parties may disclose the terms of this Settlement Agreement (a) their attorneys, accountants, auditors, financial advisors, and/or insurers, who shall be required to maintain and honor the confidentiality of such information; and (b) the extent required for tax returns and related documents. *The terms of this Settlement Agreement may be disclosed in any legal proceeding concerning the enforcement of the Settlement Agreement, provided that the party seeking to disclose it seeks a protective order requiring that the terms of the Settlement Agreement be maintained as strictly confidential, the intent being to preserve the strict confidentiality of this Settlement Agreement to the maximum extent possible.* In the event that a Party, or other person or entity in possession of this agreement or having knowledge of some or all of its terms, receives a valid subpoena, or is otherwise ordered by a Court or tribunal, to disclose any of the terms of this Agreement, the Party or other person agrees to notify all Parties in writing at least five (5) days in advance of the disclosure to afford the other Parties an opportunity to prevent or limit the disclosure or otherwise seek to maintain the strict confidentiality of the terms of this Agreement."

• The second settlement agreement contemplated an enforcement action, also requiring Ubiquity to abide by "the provisions of applicable securities laws in the disposition of any [s]hares … acquired" in accordance therein. The second settlement agreement only allowed the parties "to make a claim for relief with respect to … any illegal action[s] with respect to execution of the [settlement terms]." [Plaintiffs did not seek a protective order before disclosing some of the settlement terms in its amended complaint.]

- The second settlement agreement "resolved any claim for relief that *could have been alleged* ..., no matter how characterized, ... arising from or related to [the] Rule 144 Sales and Purchase Agreements."

All of plaintiff's relief claims in the amended complaint stem from the Ubiquity defendants alleged statutory and common law securities fraud violations.

## II.   *Discussion*.

### A.   *All Of Plaintiffs' Claims For Relief Against The Ubiquity Defendants Were Released.*

In plaintiffs' amended complaint, they refer to two confidential settlement agreements, the latest of which was entered into on October 21, 2015, but dated July 3, 2015.  Plaintiffs however do not annex these settlement agreements to their complaint.  The second settlement agreement is *unambiguous*, and contains express provisos releasing "any claim for relief," "no matter how characterized," "arising from or *related to*" the "Rule 144 Sales and Purchase Agreements."

A Rule 12(b)(6) dismissal motion may be employed when a plaintiff has included allegations disclosing absolute defenses or bars to recovery.  See *Weisbuch v. County of Los Angeles* (9th Cir. 1997) 119 F.3d 778, 783, fn. 1; and *Quiller v. Barclays American/Credit, Inc.* (11th Cir. 1984) 727 F.2d 1067, 1069.

Here, the July 3, 2015 settlement and release agreement referenced in ¶ 61 of the amended complaint unveils an absolute defense benefiting the Ubiquity defendants to *all* claims of relief in plaintiffs' amended complaint.

Rule 12(b)(6) allows the Court to consider documents not physically attached to the amended complaint if:

- The complaint refers to such document;

- The document is central to plaintiffs' claims; and

- No party questions the authenticity of the copy attached to the 12(b)(6) motion.  See, *Branch v. Tunnell* (9th Cir. 1994) 14 F.3d 449, 454.  All of these conditions have been met for the Court here to consider the release clauses in the July 3, 2015 settlement and release agreement in ruling on defendants' Rule 12(b)(6) motion.

That being said, the July 3rd settlement and release agreement unquestionably released the defendants from liability for any of the claims of relief in plaintiffs' complaint.  All of defendants' misconduct alleged in the amended complaint, leading to plaintiffs' alleged damages, revolve around or are related to the *2014* private third-party "Rule 144 Sale and Purchase Agreements," with *Kavame*, which plaintiffs contend they were "enticed" into executing by material misrepresentations by Mr. Jacklin, *an attorney they supposedly hired*, and *which occurred prior to the July 3rd settlement agreement*.  Simplified, plaintiffs allege that the Ubiquity

defendants conspired together to engage in a "pyramid scheme" in June 2014, by making material representations to them or their agents, which induced them to purchase Ubiquity legended shares through a private stock transaction from Kavame.[5]  [*AC*, ¶ 66]  Accordingly, by the express terms of the July 3rd settlement and release agreement, plaintiffs compromised and released *all known and unknown claims of relief* "arising from or related to the Rule 144 Sales and the Purchase Agreements," – the "private stock transaction."  In the operative settlement and release agreement, plaintiffs also acknowledged "that the issuance of the Shares was agreed upon as a compromise and final settlement of disputed claims." [*Jordan* dec., ¶ 3, Ex. "1," ¶ 6]  In their amended complaint, plaintiffs admit receiving the shares, and that they sold the shares.[6]  The Court therefore should

---

[5]      To emphasize, plaintiffs have not identified one alleged representation made by any of the Ubiquity defendants, which "entitled" them to purchase *Kavame's* restrictive stock.  The only alleged representation generated from Mr. Jacklin. There are no allegations that the Ubiquity defendants authorized Mr. Jacklin to make these representations.  "The requirement of specificity in a fraud action against a corporation requires the plaintiff to allege the names of the persons who made the allegeding fraudulent representation, *their authority to speak*, to when they spoke, what they said or wrote, and when it was said or written.  *Tarmann v. State Farm Mut. Auto Ins. Co.* (1991) 2 Cal.App.4th 153, 157.  Furthermore, in a holder's action based on negligent misrepresentation, inducing stockholders to retain stocks, the complaint should be pled with the same specificity required in a holder's action for fraud."  *Small v. Fritz Cos.* (2003) 30 Cal.4th 167, 184.

[6]      In their amended complaint, plaintiffs contend that they unilaterally rescinded this settlement agreement, by some written, and unattached notification.  [*AC*, ¶ 59] However, plaintiffs concede in their pleading they resold the very consideration, namely the issuance of the shares, called for in the settlement and release

dismiss the action, since all of plaintiffs' claims for relief were released, by the patent expressions in the settlement agreement.

**B.      *Plaintiffs Have Not Alleged With Particularity Any Securities Fraud And Related Claims Against The Ubiquity Defendants, Sufficient To Withstand A Rule 12(b)(6) Motion.***

In the first, second, third, fourth, fifth, sixth, seventh, eighth and ninth counts in their amended complaint, plaintiffs seek recovery from the Ubiquity defendants for various fraud violations occurring in *2014*.  In these counts, plaintiffs, *on information and belief*, only *imply* that Ubiquity may have employed Mr. Jacklin and his law firm in the private stock sales transaction between *Kavame* and the plaintiffs.  Plaintiffs do *not* allege any facts supporting the implication and supposition, or when the Ubiquity defendants hired Mr. Jacklin.  For example, plaintiffs do not "shed light" on any representation of Mr. Jacklin in 2014, which induced them to purchase *Kavame's* stock, of his employment by Ubiquity defendants to assist plaintiffs in their purchase of *Kavame's* stock.  To the contrary, plaintiffs allege that Mr. Flowers, *not an Ubiquity officer, director or agent*, "set

_____

agreement.  To effect a rescission, a party to a contract must '[r]estore to the other party everything of value which he has received from him under the contract." California *Civil Code* § 1691(b).  Therefore, plaintiffs' allegation of unilateral rescission is of no moment since they do not allege that they are able to restore this consideration to Ubiquity.

up" the phone call, with Mr. Jacklin, *which plaintiffs expressly allege* was "representing Mr. Flowers and Sea Coast."  [*AC*, ¶ 42]  Thus, it is not plausible that Mr. Jacklin was representing the Ubiquity defendants in the private stock sales transaction, in that such dual representations would create an irreconcilable conflict of interest.  They only aver that Mr. Jacklin, in *2014*, made "material misrepresentations" to plaintiffs.  [*AC*, ¶ 22][7]  These alleged misrepresentations originated from Mr. Jacklin in a telephone call between Mr. Jacklin and "a representative of the [p]laintiffs."  [*AC*, ¶¶ 43, 44, 45, 46]  Mr. Jacklin allegedly advised that, if plaintiffs purchased *Kavame* shares, Ubiquity would guarantee that by September 27, 2014, (i) the Rule 144 trading restrictions on the shares would be removed, (ii) they would provide a legal opinion to lift the restrictive trading legend, (iii) Ubiquity would reissue the shares certificate legend free, and (iv) the shares would be eligible to trade.  [*AC*, ¶ 43, 44, and 46]  This is the sum and substance of the alleged securities fraud.  There are *no* allegations that the Ubiquity defendants actually hired or authorized Mr. Jacklin *to assist Kavame* in selling its

---

[7]    At this juncture, it is important to note that this was not an issuer transaction, but rather a third party private sales transaction between Kavame, which previously acquired Ubiquity stock from another third party, Sea Coast, and plaintiffs.  There are no allegations that Ubiquity participated in this latter sales transaction, except that it may have hired the defendant attorneys.  There is *no* causal linkage how Ubiquity's employment of these attorneys harmed plaintiffs.  What is inconsistently alleged is that plaintiffs actually hired these attorneys "to write Rule 144 Legal Opinion Letters related to UBIQ stock."  [*AC*, ¶ 122]

restricted stock to plaintiffs, or that the Ubiquity defendants benefited by this private transaction between *Kavame* and plaintiffs.

Rule 9(b) mandates that "in all averments of fraud …, the circumstances constituting fraud … shall be set forth with particularity." *Desaigoudar v. Meyercord* (9th Cir. 2000) 223 F.3d 1020, 1022-1023 – fraud must be pled "with a high degree of meticulousness."[8]

"By requiring the plaintiff to allege the who, what, where and when of the alleged fraud [Rule 9(b)], requires the plaintiff *to conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported*, rather than defamatory and extortionate." *Ackerman v. Northwestern Mut. Life Ins. Co.* (7th Cir. 1999) 172 F.3d 467, 469 (emphasis added).  Allegations, like those present in plaintiff's amended complaint that are vague and *conclusory* are *insufficient* to satisfy the "particularity" element.  *Moore v. Kayport Package Express, Inc.* (9th Cir. 1989) 885 F.2d 531, 540 (emphasis

---

[8]    Two of the main purposes of the "particularity" requirement is to reduce the number of frivolous suits, like this one, brought *solely* to extract settlements, and to provide an increased measure of protection for a defendant's reputation.  *Concha v. London* (9th Cir. 1995) 62 F.3d 1493, 1502-1503.  Here, plaintiffs, by their factually unsupported rantings of "pyramid schemes" with "unknowing investors" certainly are only geared to cast aspersions on the Ubiquity defendant's reputations.  These conclusory and factually deficient "schemes," involving "issuances" of restricted stock, allegedly occurring in *2013*, under any fathomable theory are not even remotelyconnected to the "private third party" stock sales transaction between *Kavame* and the plaintiffs'

added).  As an example, a plaintiff alleges that "[a]t places and dates *unknown* to

plaintiff … defendants *conspired* and developed a scheme to cheat plaintiff out of

his interest" is too conclusory to satisfy Rule 9(b).  *Hayduk v. Lanna* (1st Cir. 1985)

775 F.2d 441, 444.  See also, *In re Equity Funding Corp. of America Sec. Litig.*

(CD CA 1976) 416 F.Supp. 161, 173, 179-180, where the court dismissed many

claims of securities fraud where, like here, there was no causal connection between

the defendants' conduct and plaintiff's purchase of the security.  In that vein, some

federal courts necessitates allegations as to "what was given up or obtained by the

alleged fraud." *Roberts v. Francis* (8th Cir. 1997) 128 F.3d 647, 651.[9]  Here, there

are no plausible allegations in plaintiffs' amended complaint disclosing how the

Ubiquity defendants were benefited by the alleged fraud.

As with fraud actions generally, a securities fraud complaint must set forth

what was false or misleading about *defendants'* statements *when the statements*

*were made*.  *In re Glen Fed, Inc. Secur. Litig.* (9th Cir. 1994) 42 F.3d 1541, 1548.

Allegations that the corporation failed to achieve promised results are not sufficient.

Rule 10b-5 liability does *not* attach merely because "[a]t one time the firm bathes

itself in a favorable light (but) (l)ater discloses that things are less rosy." *In re*

---

[9]     If allegations of fraud are predicated "on information and belief," the
charging document must set forth the source of the information and the reasons to
the belief.  *New England Data Services, Inc. v. Becker* (1st Cir. 1987) 829 F.2d 286,
288; and *Wool v. Tandem Computers, Inc.* (9th Cir. 1987) 818 F.2d 1433, 1439.

*Silicon Graphics Inc. Secur. Litig.* (9th Cir. 1999) 183 F3d 970, 988.  See also,

*Coastes v. Heartland Wireless Communications, Inc.* (ND TX 1998) 26 F.Supp.2d

910, 921-922.  Conclusory allegations that securities fraud defendants acted

"knowingly" or "must have been aware" of impending problems because of their

position in the company are patently insufficient.  *In re Advanth Corp. Secur. Litig.*

(3rd Cir. 1999) 180 F.3d 525, 539.  Here, plaintiffs only present "conclusory

allegations" that the Ubiquity defendants made "untrue statements of material facts

through corporate counsel," Mr. Jacklin.  [*AC*, ¶ 66]  There are *no* allegations

however, that the Ubiquity defendants employed or authorized Mr. Jacklin to make

these alleged "untrue" statements, *or* that the Ubiquity defendants knew what Mr.

Jacklin had said or was going to say to the plaintiffs on June 12, 2014.

     The Ninth Circuit holds that the pleading standard for scienter, an element of

a securities fraud claim, is even higher, requiring factual allegations in "great detail

establishing strong circumstantial evidence of deliberately reckless or conscious

misconduct."[10]  *In re Silicon, supra,* at 974.  Here, there are *no* factual allegations

---

[10]    Plaintiffs haphazardly and *irresponsibly* "throw out" conclusory allegations that the Ubiquity defendants' "scheme" was, *"on information and belief,"* to induce "unknowing investors" to purchase "highly speculative" Ubiquity stock, which "investments would be siphoned out of" Ubiquity.  [*AC*, ¶¶ 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32 and 33]  Even if true, none of these "on information and belief" accusations has anything to do with *Kavame's* sale of its legended stock to plaintiffs in the third party "private stock transaction" at the heart of plaintiffs' securities fraud claims.  *Kavame, not Ubiquity*, received the purchase funds from plaintiffs.

1  that the Ubiquity defendants acted consciously and deliberately relative to Mr.

2  Jacklin's June 12, 2014 alleged advisements.

3      Against this backdrop and legal precendence, plaintiffs' first amended

4  complaint fails to state cognizable securities fraud and related claims of relief

5

6  against the Ubiquity defendants.  Plaintiffs allege only that the Ubiquity defendants

7  "entered into a pyramid scheme, to sell their *own* unregistered shares."  [*AC*, ¶ 25,

8

9  emphasis added]  However, this conclusory allegation is *not tethered* to any

10  charging allegations of securities fraud by which plaintiffs were harmed.  First,

11  plaintiffs allege they were harmed in their purchase of Kavame's unregistered

12

13  stock, not stock *owned by or* sold to them by any of the Ubiquity defendants.  [*AC*,

14  ¶ 41]  They *do not* charge that any of the Ubiquity defendants made a commission

15

16  from this sale.  All that is alleged is that the Ubiquity director and officer

17  defendants somehow received "excessive compensation," and "option awards" *in*

18

19  *2013, predating* plaintiffs *2014* private stock transaction with Kavame.  [*AC*, ¶¶ 41,

20  42, 43, 44, 45, 46, and 47][11]  There are no averments linking the 2013 alleged

21

22

23  _____

24  So, how did or could have the Ubiquity defendants "siphoned" these funds "out of
   Ubiquity."  Just as important, there are *no* allegations that *Kavame* was a participant

25  in this "scheme."  In fact, *Kavame* has *not* been named as a defendant by plaintiffs.
   Finally, plaintiffs do *not* set forth the source of their information underlying this

26  "conjured up" scheme, or the reasons for their belief.  See, *New England Data,*
   *supra,* at 288.

27  [11]      In their pleading, plaintiffs repeatedly refer to "Defendants" scheme to

28  defraud Plaintiffs and artificially inflate the proceeds resultant from purchase."  [*AC*

circumstances to the specifics of the private stock transaction between *Kavame* and the plaintiffs.

More to the point, plaintiffs have *not* identified any of the Ubiquity defendants, who made any representations to plaintiffs.  There also are *no* allegations set forth with "particularity" *how* the Ubiquity defendants benefited by plaintiffs' purchase of the restricted stock from *Kavame* through the private stock transaction.

The bottom line, at the genesis of all securities fraud and related claims in plaintiffs' amended complaint is only the 2014 private stock sale of Ubiquity unregistered and legended stock by *Kavame* to plaintiffs.  There are *no* charging

---

¶ 48]  What "scheme"?  That definitional "scheme" certainly does not relate to plaintiffs' private stock transaction with *Kavame*.  There are *no* allegations how plaintiff's purchased of stock from another private investor resulted in artificially inflated proceeds.  Plaintiffs also do not inform the Ubiquity defendants how each was involved in this "scheme" to "inflate proceeds."  These allegations are nonsensical and non-sequitur.  The only allegations even remotely tying the Ubiquity defendants to any alleged misconduct as it relates to this *2014* "private stock transaction," is that Mr. Jacklin would be paid "attorney fees" "[f]or his assistance in this scheme."  [*AC*, ¶ 22]  Plaintiffs do not thereafter allege that Mr. Jacklin received any compensation from the Ubiquity defendants for any representations Mr. Jacklin made to Robert Wheat, *plaintiffs' representative*, in June 2014, that Ubiquity would "re-issue … certificates legend free by September 27, 2014," influencing plaintiffs to purchase the unregistered and legended stock from Kavame.  There are *no* allegations that the Ubiquity defendants even hired Mr. Jacklin for purposes of this "private" third party stock transaction, or, *more importantly*, whether the Ubiquity defendants authorized Mr. Jacklin to speak for the company.  If anything, Mr. Jacklin's alleged advisements would only benefit *Kavame*, not the Ubiquity defendants**.**

allegations against the Ubiquity defendants for any misrepresentations they made in that third party securities transaction, except the conclusory, illogical and speculative implication that Mr. Jacklin, who allegedly made certain implausible representations to plaintiffs in June 2014, did so at the behest of the Ubiquity defendants, who and which did not stand to gain any "benefit" from this "private" transaction.  This third party transaction did not provide "real money" to the Ubiquity defendants [*AC*, ¶ 40], which could have been "looted" and "siphoned out" *of the company* by the Ubiquity defendants.  *Kavame was* the *recipient* of the "real money."  Plaintiffs' irresponsible and *unsupported* charges of securities fraud and related claims of relief are not only conclusory, but obviously directed to impugn the integrity of the Ubiquity defendants in a public record, and otherwise extort, the Ubiquity defendants into an unwarranted settlement.  This Court thus should grant the Rule 12(b)(6) dismissal motion to the first, second, third, fourth, fifth, sixth, seventh, eighth[12] and ninth claims for relief.

---

[12]     The eighth claim for relief is for breach of fiduciary duty is likewise hopelessly conclusory and fails to state a cognizable claim.  At its heart, plaintiffs allege that the Ubiquity defendants breached their fiduciary duties [even if such duties existed] *in 2013*, before plaintiffs became Ubiquity shareholders, in taking excessive salaries, and otherwise entering into a "scheme" to "defraud [p]laintiffs and to manipulation [their] shares."  [*AC*, ¶ 109, 110]  Again, there are *no* allegations of "particularized" conduct on the part of the Ubiquity defendants tethered to the harm allegedly experienced by the plaintiffs.  What plaintiffs generally allege is that the Ubiquity defendants *delayed* the removal of the restrictive legend on the Kavame stock they purchased *beyond* September 27, 2014.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.   *Conclusion.*[13]

The amended complaint is a "poster child" of an inadequate and non-particularized pleading of fraud and related claims as against the Ubiquity defendants.  Under Rule 12(b)(6), this Court thus should dismiss plaintiffs' entire action, with prejudice.

Dated:   February 29, 2016          **LAW OFFICES OF RANDALL S. WAIER**

By:  */s/Randall S. Waier*
        Randall S. Waier
        Attorneys for Defendants Ubiquity, Inc.; Chris
        Carmichael; Connie Carmichael; Brenden
        Garrison; Henry Blessley; and Nicholas
        Mitsakos
        E-mail:  admin@waier.com

---

This, at best, circumstantially might be relevant to whether Mr. Jacklin's June 2014 statements to plaintiff's representations were false, i.e. the stock restriction would be removed by September 27, 2014.  However, there are no allegations that Mr. Jacklin knew, that the plaintiff's would provide the necessary documentation for the restriction removal after September 27, 2014.  Plaintiffs *inconsistently* aver that they provided "their [newly acquired Ubiquity stock from Kavame] to [Ubiquity] with a request to register the securities without a restrictive legend on or before October 2, 2014."  [*AC*, ¶ 54]  By this conduct, plaintiffs concede that they, not Mr. Jacklin, were at fault in their stock not becoming freely tradable by September 27, 2014.

[13]     The Ubiquity defendants also incorporate herein the arguments and legal authority expressed in Mr. Jacklin's and his firm's 12(b)(6) motion to dismiss, concurrently filed herewith.

1

## CERTIFICATE OF SERVICE

2

3        I hereby certify that counsel of record for the Plaintiff's are being served with

4   a copy of this document via electronic mail on this 29th day of February, 2016.

5

6

7                    */s/ Randall S. Waier*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   .