**LAW OFFICES OF RANDALL S. WAIER**
Randall S. Waier, CSB 75430
20241 Birch Street, Suite 103
Newport Beach, CA 92660
(949) 476-2511

Attorneys for Defendants Ubiquity, Inc.; Chris Carmichael; Connie Carmichael; Brenden Garrison; Henry Blessley; and Nicholas Mitsakos

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Kay Strategies, Inc.**, a Nevada corporation, **Makaiwi & Associates, Inc.**, a Nevada corporation, **Result Corporation**, a Nevada corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>**Ubiquity, Inc.**, a Nevada corporation, **Chris Carmichael**, an individual, **Connie Carmichael**, an individual, **Brenden Garrison**, an individual, **Henry Blessley**, an individual, **Nicholas Mitsakos**, an individual, **Gregg E. Jacklin**, an individual, **Szaferman, Lakind, Blumstein & Blader, P.C.**, a New Jersey professional corporation,<br><br>Defendants. | CASE NO.  15CV2720-H-DHB<br><br>**DECLARATION OF CONNIE JORDAN (CARMICHAEL) IN SUPPORT OF THE MOTION TO DISMISS**<br>**[FRCP Rule 12(b)(5) and 12(b)(6)]** |

DECLARATION OF CONNIE JORDAN (CARMICHAEL) - 1

I *Connie Jordan (Carmichael)* declare:

1.   I am the Executive vice President and a board member of Ubiquity, Inc. ("Ubiquity") and apparently a defendant in this litigation. I have personal knowledge of all facts set forth in my declaration. If called upon to do so, I would and could competently testify thereto. My offices is located at Ubiquity's corporate headquarters in Irvine, California.

2.   On December 17, 2016, someone [unidentified] left a copy of the summons and pending complaint on the reception desk in the lobby of Ubiquity's corporate offices. It was not served personally on anyone, but later retrieved when the receptionist returned to her desk. Nobody else, including Chris Carmichael, myself, Brenden Garrison, Henry Blessley or Nicholas Mitsakos have ever been personally served with the complaint. Mr. Blessley lives out of state. Messrs. Carmichael, Garrison, Bleesley and myself were out of the office that day in meetings. Nor has the complaint been received by mail by either Ubiquity, myself, or Messrs. Carmichael, Garrison or Blessley.

3.   Attached hereto as Exhibit "1" is an accurate copy of the July 3, 2015 settlement and release agreement, referenced at ¶ 61 of the pending complaint.

I declare under penalty of perjury under the laws of the United States that the forgoing is true and correct. Executed at Irvine, California, on January 28, 2016.

*[signature]*
Connie Jordan (Carmichael)

**EXHIBIT "1"**

SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT, (the "Agreement") is made and dated for reference the 30th day of ~~June~~ July 2015 (the "Effective Date").

AMONG:

**UBIQUITY, INC.** a company duly incorporated pursuant to the laws of the State of Nevada and having an office at 9801 Research Drive, Irvine, California 92618 (the "Company"), and

**KAY STRATEGIES INC., MAKAIWI & ASSOCIATES, INC., JTS INVESTMENTS, INC.** and **RESULT CORPORATION** (collectively, the "Shareholders").

Collectively, the Company and the Shareholders shall be referred to as the "Parties" and each a "Party."

WHEREAS:

A. The Shareholders together purchased a total of 333,333 shares of the Company's common stock, par value $0.001 (the "Common Stock") through various stock purchase agreements with third party shareholders of the Company's common stock (the "Purchase Agreements").

B. The Shareholders have asserted various claims against the Company regarding the Company's actions when the Shareholders wished to sell the 333,333 shares in October 2014 (the "Rule 144 Sales").

C. The Company denies the allegations asserted against it.

D. The Parties entered into a Settlement Agreement dated February 25, 2015 ("Settlement Agreement") in settlement of the Rule 144 Sales and Purchase Agreement claims.

E. The Settlement Agreement provided that the Company would (a) issue 600,000 shares of the Company's Common Stock by March 2, 2015, (b) Company counsel would provide an opinion of counsel that the shares are exempt under Rule 144 by March 5, 2015, and (c) Company would issue the shares without a restrictive legend by March 10, 2015.

F. The Shareholders allege that the Company failed to issue the 600,000 shares, failed to provide the opinion of counsel and failed to issue the shares without a restrictive legend, all in breach of the Settlement Agreement.

G. The Company issued the 600,000 shares through its transfer agent as a book entry on March 3, 2015 (the "Book Entry Shares"), though a stock certificate(s) was never issued.

H. Without admitting the claims and defenses that have been or could have been asserted by the Company, in arbitration or in any other legal proceeding, and being mindful of the hazards of litigation, the Parties have now agreed to resolve all disputes, including the alleged breach of the Settlement Agreement under the terms below.

**NOW THEREFORE THIS AGREEMENT WITNESSES** that in consideration of the premises and of the covenants, conditions and provisos herein contained, and other good and valuable consideration, the parties hereto agree as follows:

1. The Shareholders hereby agree to accept, subject to paragraph 2 and 4 hereof, (a) the Book Entry Shares as fully paid and non-assessable shares of the Company's Common Stock issued in the name of Kay Strategies, Inc. (the "Shares"); and, (b) 5,000 fully paid and non-assessable shares of the Company's Common Stock to be issued in the name of Kay Strategies, Inc. (the "Additional Shares"), all as settlement of all claims between them and the Company, related to the Rule 144 Sales, the Purchase Agreements and the Settlement Agreement. The Shares will be issued in certificate form in the name of Kay Strategies, Inc. and will be initially issued with the legend provided in paragraph 8 below. The certificate will be provided to Shareholders' legal counsel within 10-days after the Effective Date. By September 8, 2015 the Company will provide, through its outside counsel, an opinion of counsel that the Shares are exempt under Rule 144 provided that the Shareholders provide outside counsel with all required documents to issue the Rule 144 opinion in a timely manner. By September 14, 2015 the Company will issue the Shares through its transfer agent and provide stock certificates, without the restrictive legend as "free-trading" shares (the "Free Trading Certs"). In the event that Shareholder's brokerage accounts require additional information or documentation, Company will, using best efforts, provide such information and documentation without delay.

2. The Company provides a guarantee that the Shareholders will be able to sell the Shares on the open market for a price of $.54 per share or greater during the time starting on their receipt of the Free Trading Certs through and including December 31, 2015. In the event that the Shareholders are unable to sell the Shares for at least $.54 per share, the Company will compensate the Shareholders, either through cash or additional Company Common Stock (freely trading without restrictive legend), the difference between the Shareholder's selling price (minus any transaction fees) and $.54 per share for all Shares. Within three (3) days of Shareholder's providing confirmation to the Company of the sale of the Shares ("Sale Confirmation Date"), Company will initially issue additional shares (in an amount sufficient to cover Company's guarantee provided in this paragraph 2) with the legend provided in paragraph 8 below. Within six (6) days of the Sale Confirmation Date, the Company will provide, through its outside counsel, an opinion of counsel that the additional shares are exempt under Rule 144. Within nine (9) days of the Sale Confirmation Date, the Company will issue the additional shares through its transfer agent, without the restrictive legend as free-trading shares. If the Company fails to provide the additional shares (freely trading without restrictive legend) within nine (9) days of the Sale Confirmation Date, the Company will in addition, provide compensation in the amount of Three hundred twenty four thousand dollars ($324,000.00) to Shareholders within five (5) business days by wiring the amount to an account selected by the Shareholders. In the event that the additional shares do not cover the guarantee, the Company will provide the outstanding difference in US Dollars via wire (to the account designated by Shareholders) within five (5) days of Shareholder's providing sales confirmations of the additional shares.

3. Subject to Paragraphs 1 and 2, the Shareholders, on behalf of themselves, their predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, companies under common control with any of the foregoing, affiliates and assigns, and its and their past, present, and future officers, directors, shareholders, interest holders, members, partners, attorneys, agents, employees, managers, representatives, assigns, and successors in interest, and all persons acting by, through, under, or in concert with them, and each of them, hereby release and discharge the Company, together with its predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, companies under common control with any of the foregoing, affiliates and assigns and its and their past, present, and future officers, directors, shareholders, interest holders, members, partners, attorneys, agents, employees, managers, representatives, assigns and successors in interest, and all persons acting by, through, under or in concert with them, and each of them, from all known and unknown charges, complaints, claims,

grievances, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, penalties, fees, wages, medical costs, pain and suffering, mental anguish, emotional distress, expenses (including attorneys' fees and costs actually incurred), and punitive damages, of any nature whatsoever, known or unknown, which either party has, or may have had, against the other party, whether or not apparent or yet to be discovered, or which may hereafter develop, for any and all acts or omissions arising from or related to the Rule 144 Sales, the Purchase Agreements and the Settlement Agreement.

4. The Company, on behalf of themselves, their predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, and its and their past, present, and future officers, directors, shareholders, interest holders, members, partners, attorneys, agents, employees, managers, representatives, assigns, and successors in interest, hereby release and discharge the Shareholders, together with its predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, affiliates and assigns and its and their past, present, and future officers, directors, shareholders, interest holders, members, partners, attorneys, agents, employees, managers, representatives, assigns and successors in interest, and each of them, from all known and unknown charges, complaints, claims, grievances, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, penalties, fees, wages, medical costs, pain and suffering, mental anguish, emotional distress, expenses (including attorneys' fees and costs actually incurred), and punitive damages, of any nature whatsoever, known or unknown, which either party has, or may have had, against the other party, whether or not apparent or yet to be discovered, or which may hereafter develop, for any and all acts or omissions arising from or related to the Rule 144 Sales, the Purchase Agreements and the Settlement Agreement.

5. The Parties hereby agree that all claims released hereunder shall expressly include any and all known and unknown claims of every nature and kind whatsoever which the Parties now or hereafter may have with respect to each other and/or the Disputes, notwithstanding Section 1542 of the California Civil Code, which provides that:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND WHICH IF KNOWN BY HIM, MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."

All rights under §1542 of the California Civil Code are hereby expressly, fully, knowingly, and intentionally forever waived and relinquished by the Parties. All Parties hereby acknowledge that each understands the significance and consequences of such specific waiver under §1542 of the California Civil Code, and that each has had the opportunity to seek the advice of legal counsel of their choosing.

6. Subject to paragraphs 1 and 2, this Agreement resolves any claim for relief that could have been alleged by the Shareholders, no matter how characterized, including, without limitation, compensatory damages, damages for breach of contract, bad faith damages, reliance damages, liquidated damages, punitive damages, costs and attorneys fees against Company arising from or related to Rule 144 Sales, the Purchase Agreements and the Settlement Agreement. Notwithstanding the foregoing, if either the Company or the Shareholders engage in any illegal action(s) with respect to the execution of the terms of this Agreement before the entire amount set forth in Paragraph 1 is issued to the Shareholders, then the other party is entitled to make a claim for relief with respect to such illegal action(s).

7. Subject to paragraphs 1 and 2, the Shareholders acknowledge that (i) the consideration set forth in this Agreement, which includes, but is not limited to, the Shares and the Additional Shares, is in full settlement of all claims or losses of whatsoever kind or character that they have, or may ever have had, against the Company and all related parties identified in paragraph 3, above arising from related to the Rule 144 Sales, the Purchase Agreements, and the Settlement Agreement, and (ii) by signing this Agreement, and accepting the consideration provided herein and the benefits of it, they are giving up forever any right to seek further monetary or other relief from the other party, for any acts or omissions up to, and including the Effective Date arising from or related to the Rule 144 Sales, the Purchase Agreements and the Settlement Agreement.

8. The Parties acknowledge that the issuance of the Shares and the Additional Shares and the guarantee in paragraph 2 was agreed upon as a compromise and final settlement of disputed claims and that the issuance of the Shares and the Additional Shares is not, and may not be construed as, an admission of liability by the Company and is not to be construed as an admission that the Company engaged in any wrongful, tortious or unlawful activity.

9. The Parties shall keep the terms of this Agreement strictly confidential and agree not to disclose to any other person or entity the terms of this Agreement, except that the Parties may disclose the terms of this Agreement to (a) their attorneys, accountants, auditors, financial advisors, and/or insurers, who shall be required to maintain and honor the confidentiality of such information; and (b) the extent required for tax returns and related documents and other applicable law. The terms of this Agreement may be disclosed in any legal proceeding concerning the enforcement of this Agreement, provided that the party seeking to disclose it seeks a protective order requiring that the terms of this Agreement be maintained as strictly confidential, the intent being to preserve the strict confidentiality of this Agreement to the maximum extent possible. In the event that a Party, or other person or entity in possession of this agreement or having knowledge of some or all of its terms, receives a valid subpoena, or is otherwise ordered by a Court or tribunal, to disclose any of the terms of this Agreement, the Party or other person agrees to notify all Parties in writing at least five (5) days in advance of the disclosure to afford the other Parties an opportunity to prevent or limit the disclosure or otherwise seek to maintain the strict confidentiality of the terms of this Agreement. The obligations of confidentiality will not apply if a Party seeks to enforce this Agreement in a court of competent jurisdiction.

10. The Shareholders acknowledge that the issuance of the Shares and the Additional Shares as contemplated by paragraph 1 of this Agreement is subject to compliance with applicable securities laws. Further, the Shareholders understand that the sales of the Shares and the Additional Shares by the Company under this Agreement have not been registered under the Securities Act of 1933, as amended (the "Securities Act") or any state securities laws and are being offered and sold in reliance upon specific exemptions from the registration requirements of federal and state securities laws. However, the Shares can be resold in accordance with Rule 144 and Company will remove the restrictive legend as provided in paragraph 1. The Shareholders understand that certificates representing the Shares and the Additional Shares shall initially bear a legend substantially in the following form, as appropriate:

"NEITHER THE ISSUANCE AND SALE OF THE SECURITIES REPRESENTED BY THIS CERTIFICATE NOR THE SECURITIES INTO WHICH THESE SECURITIES ARE EXERCISABLE HAVE BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR APPLICABLE STATE SECURITIES LAWS. THE SECURITIES MAY NOT BE OFFERED FOR SALE, SOLD, TRANSFERRED OR ASSIGNED (I) IN THE ABSENCE OF (A) AN EFFECTIVE REGISTRATION STATEMENT FOR THE SECURITIES UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR (B) AN

OPINION OF COUNSEL (WHICH COUNSEL SHALL BE SELECTED BY THE SHAREHOLDERS), IN A GENERALLY ACCEPTABLE FORM, THAT REGISTRATION IS NOT REQUIRED UNDER SAID ACT OR (II) UNLESS SOLD PURSUANT TO RULE 144 OR RULE 144A UNDER SAID ACT. NOTWITHSTANDING THE FOREGOING, THE SECURITIES MAY BE PLEDGED IN CONNECTION WITH A BONA FIDE MARGIN ACCOUNT OR OTHER LOAN OR FINANCING ARRANGEMENT SECURED BY THE SECURITIES."

11. This Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective heirs, successors and assigns.

12. This Agreement shall be governed, construed and enforced according to the laws of the state of Nevada. The Parties agree to the exclusive jurisdiction of the courts of California located in San Diego County, California. The Parties waive their right to have an action under this Agreement brought or tried elsewhere. The prevailing Party in any action under this Agreement shall be entitled to recover its reasonable attorney's fees and legal costs in addition to any other damages or other awards order by the Court.

13. The Parties intend this Agreement to be legally binding upon and shall inure to the benefit of each of them and their respective successors, assigns, executors, administrators, heirs and estates. Moreover, the persons and entities referred to in Section 2 above, but not a Party, are third-party beneficiaries of this Agreement.

14. The Company agrees to abide by the provisions of applicable securities laws, including but not limited to, the Securities Act related to the Shares.

15. The Shareholders agree to abide by the provisions of applicable securities laws in the disposition of any Shares of the Company acquired pursuant to this Agreement.

16. The Shareholders and the Company may execute this Agreement in two or more counterparts, each of which is deemed to be an original and all of which constitute one agreement, effective as of the date first above written.

17. By signing below, each Party warrants and represents that the person signing this Agreement on its behalf has authority to bind that Party and that the Party's execution of this Agreement is not in violation of any by-law, covenants and/or other restrictions placed upon them by their respective entities.

COMPANY:

Ubiquity, Inc.

By: _____
Name:   Chris Carmichael
Title:   Chief Executive Officer

SHAREHOLDERS:
Kay Strategies, Inc.

Name: Robert Wheat
Title: President

Makaiwi & Associates, Inc.

Name: Allan J. Ligi
Title: President

JTS Investments, Inc.

Name: Jason Stringham
Title: President

Result Corporation

Name: Robert J. Martins
Title: President

SHAREHOLDERS:
Kay Strategies, Inc.

_____
Name: Robert Wheat
Title: President

Makaiwi & Associates, Inc.

*/s/ Allan J. Lipa*
_____
Name: Allan J. Lipa
Title: President

JTS Investments, Inc.

_____
Name: Jason Stringham
Title: President

Result Corporation

_____
Name: Robert J. Martins
Title: President

SHAREHOLDERS:
Kay Strategies, Inc.

---
Name: Robert Wheat
Title: President

Makaiwi & Associates, Inc.

---
Name: Allan J. Ligi
Title: President

JTS Investments, Inc.

---
Name: Jason Stringham
Title: President

Result Corporation

---
Name: Robert J. Martins
Title: President

Exh. 1, Pg. 9

SHAREHOLDERS:
Kay Strategies, Inc.

Name: Robert Wheat
Title: President

Makaiwi & Associates, Inc.

Name: Allan J. Ligi
Title: President

JTS Investments, Inc.

Name: Jason Stringham
Title: President

Result Corporation

Name: Robert J. Martins
Title: President

Page 6 of 6

**CERTIFICATE OF SERVICE**

I hereby certify that counsel of record for the Plaintiff's are being served with a copy of this document via electronic mail on this 29th day of Feburary, 2016.

/s/ Randall S. Waier