Chandler G. Weeks, Esq., CSB No. 245503
Email: cgw@weeksnelson.com
WEEKS NELSON
462 Stevens Avenue, Suite 310
Solana Beach, CA 92075
Telephone: (858) 794-2140
Fax: (858) 794-2141
Email: Office@weeksnelson.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Kay Strategies, Inc.**, a Nevada corporation, **Makaiwi & Associates, Inc.**, a Nevada corporation, **JTS Investments, Inc.**, a California corporation, **Result Corporation**, a Nevada corporation <br><br> Plaintiffs, <br><br> vs. <br><br> **Ubiquity, Inc.,** a Nevada corporation, **Chris Carmichael**, an individual, **Connie Carmichael**, an individual, **Brenden Garrison**, an individual, **Henry Blessley**, an individual, **Nicholas Mitsakos**, an individual, **Gregg E. Jaclin**, an individual, **Szaferman, Lakind, Blumstein & Blader, P.C.**, a New Jersey professional corporation, <br><br> Defendants. | Case No.: 3:15-cv-02720-H-DHB <br><br> PLAINTIFFS' RESPONSE TO DEFENDANTS' (UBIQUITY AND OFFICERS) MOTION TO DISMISS FIRST AMENDED COMPLAINT <br><br><br> Date: March 28, 2016 <br> Time: 10:30 a.m. <br> Dept.: 15A |

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION .......................................................................... 1

II. FACTS ........................................................................................ 1

III. DISCUSSION............................................................................. 5

A.    Legal Standard ..................................................................... 5

B.    The Defendants Are Not Released by the Settlement Agreements ...... 6

    1. The Settlement Agreements Should Not Be Considered ............... 6
    2. The Release Is Contingent on UBIQ Providing Consideration, Which It Failed to Provide ...................................................... 7
    3. The Settlement Agreement Was Extinguished by Rescission ......... 8
    4. Defendants' Alleged Facts Should Not Be Considered For Its Motion to Dismiss ............................................................... 9

C.    Plaintiffs' Fraud Claims Are Alleged With Specificity ...................... 9

    1. The Amended Complaint Identifies the Circumstances Constituting the Fraud ......................................................... 10
    2. The Amended Complaint's Allegations Are Pled With Specificity ......................................................................... 11

        a. JACLIN was employed by UBIQ to assist Defendants in securities fraud ......................................................... 12
        b. Defendants personally benefitted from the fraud .................. 12

    3. Plaintiffs Have Properly Pled Scienter and Particularity ............. 14

IV. CONCLUSION ........................................................................... 17

# TABLE OF AUTHORITIES

Page

*Branch v. Tunnell,*
    14 F.3d 449 ................................................................................... 6

*Clegg v. Cult Awareness Network,*
    18 F.3d 752 ................................................................................. 5, 9

*Hal Roach Studios, Inc. v. Richard Feiner & Co.,*
    896 F.2d 1542 ............................................................................. 6, 7

*LSO, Ltd. v. Stoh,*
    205 F. 3d 1146 ........................................................................... 6, 9

*Neubronner v. Milken,*
    6 F.3d 666 ..................................................................................... 9

*NL Industries, Inc. v. Kaplan,*
    792 F.2d 896 ................................................................................. 6

*In Re Silicon Graphics Inc. Secur. Litig.*
    183 F3d 970 ................................................................................ 14

Other citations:

California Civil Code
    Section 1688 .................................................................................. 8
    Section 1689 .................................................................................. 8
    Section 1691(b).............................................................................. 9

California Commercial Code
    Section 8401 ............................................................3, 4, 11, 15, 16

Fed. R. Civ. Procedure
    Rule 9(b)......................................................................1, 5, 9, 17
    Rule 12(b) ..................................................................................... 7
    Rule 12(b)(6) ............................................................................. 5, 6
    Rule 56.......................................................................................... 7

15 U.S. Code Section 78j, Section 10(b)........................................................14

17 CFR 240.10b-5 .................................................................................14

iii

## I.      INTRODUCTION

Defendants' Motion to Dismiss can be summed up in one word – meritless. Defendants' Motion, filled with misrepresentations to the Court, claims two reasons for the Court to dismiss Plaintiffs' Amended Complaint.

One, that the July 2015 settlement agreement released the Defendants of the claims, despite the fact that the settlement agreement specifically provides that the release is subject to the Plaintiffs receiving the consideration, which Defendants have failed to provide and that Plaintiffs rescinded the settlement agreement in October of 2015.

Two, that the Amended Complaint fails to meet specificity requirements of Rule 9(b), despite the fact that the Amended Complaint provides specificity including who, what, when and where related to the fraud claims.

The truth is the Defendants have defrauded innocent investors out of millions of dollars through securities fraud, including the Plaintiffs. It is time for the Defendants to be responsible for their fraudulent and heinous actions.

## II.     FACTS

Plaintiffs Kay Strategies, Inc., Makaiwi & Associates, Inc., JTS Investments, Inc. and Result Corporation (collectively "Plaintiffs") filed their Amended Complaint on February 12, 2016 against the Defendants Ubiquity, Inc., ("UBIQ") Chris Carmichael ("Carmichael"), Connie Carmichael ("Jordan"), Brenden Garrison ("Garrison"), Henry Blessley ("Blessley"), and Nicolas Mitsakos ("Mitsakos") (collectively "UBIQ and Officers") and also Gregg E. Jaclin ("JACLIN"), and Szaferman, Lakind, Blumstein & Blader, P.C. ("Szaferman") (collectively "UBIQ Lawyers").

Carmichael used UBIQ to acquire a registered company called Fermo Group, Inc. in 2013 for the purpose of a scheme to manipulate the stock market through securities fraud and to siphon the investments of unknowing investors for the Defendants' gain. (Amended Complaint ¶ 19). In 2013, Mitsakos was brought

in to further the scheme to manipulate the stock market and commit securities fraud (Amended Complaint ¶ 20). Mitsakos made millions from the UBIQ securities fraud (Amended Complaint ¶ 20). UBIQ hired legal counsel, JACLIN of the Szaferman law firm to assist with the securities fraud scheme (Amended Complaint ¶ 21). JACLIN has been involved in multiple securities fraud schemes prior to this UBIQ scheme, including his old law firm being dismantled by the SEC for securities fraud (Amended Complaint ¶ 21). Each Defendant was brought into UBIQ to assist in their scheme to manipulate the market and receive personal gain through securities fraud (Amended Complaint ¶ 23).

The Defendants devised a plan to use UBIQ to solicit the sale of securities and obtain millions of dollars from unknowing investors (including the Plaintiffs) through the sale of unregistered securities by misrepresentations, fraud and market manipulation (Amended Complaint ¶ 24). This scheme/plan included (a) selling securities and siphoning out such investments for Defendants' personal gain (Amended Complaint ¶ 25), (b) manipulating the stock and artificially limiting the supply of UBIQ stock to inflate the stock price to be able to sell their own securities at a gain (Amended Complaint ¶ 26), (c) making material misrepresentations regarding the operation of UBIQ to gain additional investments (Amended Complaint ¶ 27), (d) making material misrepresentations about the ability for investors to sell the UBIQ stock under Rule 144 in order to get additional investments (Amended Complaint ¶ 28), (e) making material misrepresentations regarding being an obligatory reporting company under the Securities Act of 1934 to obtain more investments (Amended Complaint ¶ 29), (f) issuing fraudulent press releases representing that the UBIQ applied to uplist to the NASDAQ exchange to obtain more investments (Amended Complaint ¶ 30), (g) prohibiting investors from using legal counsel other than JACLIN and Szaferman to issue legal opinions to control and manipulate the distribution of the UBIQ securities (Amended Complaint ¶ 31), (h) intentionally not filing SEC

required documents so that Defendants could manipulate and control the market by restricting securities sales when it benefited Defendants (Amended Complaint ¶ 32), (i) selectively deciding which and when investors would receive UBIQ stock certificates and using an illegal practice called Gypsy Swaps (Amended Complaint ¶ 33), (j) refusing to register UBIQ securities in violation of California Commercial Code Section 8401 to control and manipulate the sale of UBIQ securities (Amended Complaint ¶ 34), (k) allowing each and every Defendant to personally profit from the scheme through outrageous salaries, bonuses, stock options and other payouts from UBIQ (Amended Complaint ¶ 35), and (l) using others to assist in their plan and paying them out through UBIQ funds or securities (Amended Complaint ¶ 36).

Defendants' plan was successful, as the Defendants siphoned out millions of dollars to the gain of the Defendants including (a) Carmichael receiving over $5 million plus bonuses and commissions (Amended Complaint ¶ 37), (b) Jordan receiving nearly $2 million plus bonuses and commissions (Amended Complaint ¶ 38), and (c) Garrison receiving over $300,000 plus bonuses (Amended Complaint ¶ 39).

In 2014, Kavame Holdings, Inc. ("Kavame") and Sea Coast Advisors, Inc. ("Sea Coast"), advisors to UBIQ and assisting UBIQ in the sale of unregistered securities, offered Plaintiffs an investment into UBIQ securities (Amended Complaint ¶ 41). As part of the sale of the securities, UBIQ made material misrepresentations to the Plaintiffs regarding the securities, through their counsel, JACLIN.

On or about June 12, 2014, JACLIN as UBIQ's corporate counsel and on behalf of UBIQ, made material misrepresentations to Plaintiffs' representative Robert Wheat and to Troy Flowers regarding the UBIQ securities (Amended Complaint ¶ 43). Specifically, that if Plaintiffs purchased the UBIQ securities (a) that UBIQ would lift the restrictions of the UBIQ securities by September 27,

2014 (Amended Complaint ¶ 43), (b) that JACLIN would write a Rule 144 legal opinion letter to remove the restricted trading legend on September 27, 2014 (Amended Complaint ¶ 43), (c) that UBIQ would re-issue the certificates as free trading and that the UBIQ securities would be eligible to trade under Rule 144 all by September 27, 2014 (Amended Complaint ¶ 43), (d) that JACLIN would provide the legal services to Plaintiffs including writing the Rule 144 legal opinions (Amended Complaint ¶ 44 & 45), and (e) that UBIQ had applied for a NASDAQ up listing, had met the requirements, and would become an obligatory reporting company and be up listed to the NASDAQ exchange (Amended Complaint ¶ 46). Such misrepresentations were made as part of Defendants' scheme to defraud Plaintiffs and artificially inflate the proceeds resultant from the purchase (Amended Complaint ¶ 48).

Plaintiffs purchased the UBIQ securities based on the representations made by UBIQ and JACLIN (Amended Complaint ¶ 47).

In furtherance of Defendants' scheme, JACLIN and Szaferman intentionally did not provide Rule 144 legal opinions to the Defendants. JACLIN and Szaferman acted to prevent Plaintiffs from the discovery of the fraudulent scheme pretending to be attorney gatekeepers, while helping to perpetuate the Defendants' fraud (Amended Complaint ¶ 51).

In furtherance of Defendants' scheme, UBIQ refused to register the securities without a restrictive legend in violation of California Commercial Code Section 8401(Amended Complaint ¶ 55). Plaintiffs were unable to sell the UBIQ securities, which resulted in damages (Amended Complaint ¶ 56).

On or about November 18, 2014, Wheat met with Carmichael and Garrison at UBIQ's office in Irvine, California. At the meeting, Carmichael informed Plaintiffs that they would not free up the stock unless Plaintiffs made an additional investment into UBIQ (Amended Complaint ¶ 57). Defendants' scheme included illegally withholding securities in an effort to get them to make

further capital investments, as they did to the Plaintiffs (Amended Complaint ¶ 58).

As a direct result of Defendants' conduct, Plaintiffs lost over $1,660,000 (Amended Complaint ¶ 59). Plaintiffs and UBIQ entered into two confidential settlement agreements, both of which were rescinded (Amended Complaint ¶ 61). UBIQ failed to provide the consideration and Plaintiffs rescinded the first settlement agreement (Amended Complaint ¶ 61). The second settlement agreement superseded the first settlement agreement, which UBIQ again failed to provide the consideration (Amended Complaint ¶ 61). Plaintiffs rescinded the second settlement agreement on October 21, 2015 for UBIQ's failure to provide the consideration (Amended Complaint ¶ 61).

UBIQ never intended to provide the consideration for the settlement agreements, but induced Plaintiffs, through fraud and misrepresentations, to enter the settlement agreements (Amended Complaint ¶ 62). The fraudulent settlements were used to further Defendants' scheme by delaying lawsuits to continue to obtain additional capital investments from other unknowing investors (Amended Complaint ¶ 63).

Plaintiffs' Amended Complaint alleges a prima facie case for each cause of action.

III.   DISCUSSION

Defendants' Motion provides two reasons for the Court to dismiss the Amended Complaint. The first is that the claims against the Defendants were released in the July 3, 2015 settlement agreement ("Settlement Agreement"). The second is that Plaintiffs' fraud claims fail to meet the standards of Rule 9(b).

A.   **Legal Standard**

In considering a Rule 12(b)(6) motion, review is limited to the contents of the complaint. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994). "When considering a Rule 12(b)(6) motion to dismiss for failure to state a

5

claim, the court must accept as true all factual allegations in the complaint as well as all reasonable inferences that may be drawn from such allegations." *LSO, Ltd. v. Stoh*, 205 F. 3d 1146, 1150, n. 2 (9th Cir. 2000). The court must accept all material allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *NL Industries, Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

B.  **The Defendants Are Not Released By The Settlement Agreements**.

The Defendants' Motion argues that all of Plaintiffs claims for relief against the Defendants were released by the Settlement Agreement. However, the Settlement Agreements were properly rescinded and the release was contingent on UBIQ providing all of the consideration, which it failed to do.

    1.  <u>The Settlement Agreements Should Not Be Considered</u>.

Defendants' Motion requests that the Court look at a document outside of the Amended Complaint, namely the Settlement Agreement. However, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990).

Defendants cite an exception to this rule where (a) the complaint refers to such document, (b) the document is central to plaintiffs' claims, and (c) no party questions the authenticity of the copy attached to the motion. (Defendants' Motion, P. 17, citing *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). However, Defendants' motion fails to provide how the Settlement Agreement is in any way central to Plaintiffs' claims. To the contrary, Plaintiffs' claims are completely separate from the Settlement Agreement and was only included to provide historic context. Adding or removing the reference to the Settlement Agreement does not affect Plaintiffs' claims in any way. Thus, the Court should not consider the Settlement Agreement unless the Court treats Defendants'

Motion as one for summary judgment and disposed as of provided in Rule 56. Fed. R. Civ. P. 12(b), *Hal Roach Studios*, 896 F.2d at 1555 n. 19.

> 2.    The Release Is Contingent on UBIQ Providing Consideration, Which It Failed To Provide.

If the Court does consider the Settlement Agreement as a basis for its ruling on Defendants' Motion, we ask that the Court review the actual words of the Settlement Agreement, not the intentional[1] misquote of the Settlement Agreement in Defendants' Motion, which specifically left out that the release was subject to UBIQ providing the consideration in the Settlement Agreement.

The actual release language in Section 3 of the Settlement Agreement starts, "Subject to Paragraphs 1 and 2, the Shareholders…", followed by the release language. The plain language of the Settlement Agreement provides that the release is subject to or contingent on UBIQ fulfilling paragraphs 1 and 2 of the Settlement Agreement. Paragraphs 1 and 2 are the consideration to be provided by UBIQ under the Settlement Agreement. However, UBIQ failed to provide the consideration in paragraphs 1 and 2 of the Settlement Agreement (Amended Complaint ¶ 61). Thus, there is no release as UBIQ failed to provide consideration under paragraphs 1 and 2 of the Settlement Agreement.

Additionally, Defendants' Motion materially misleads the Court by claiming that Paragraph 59 of the Amended Complaint states that Plaintiffs received the consideration and sold it. Paragraph 59 of the Amended Complaint does not provide this and has nothing to do with the Settlement Agreement or its consideration. Paragraph 59 is about the UBIQ securities purchased in 2014 and

---

[1] Defendants' counsel (Mr. Waier) also misquoted the Settlement Agreement in a previous filing. On February 1, 2016, Plaintiffs' counsel (Mr. Weeks) spoke with Mr. Waier and informed him of the misquote. Mr. Waier was brazen and said it didn't matter if he misquoted the language as it was still a release regardless of the actual language in the Settlement Agreement.

provides that Plaintiffs' were only able to sell the UBIQ securities for $175,438 because of Defendants' scheme and securities fraud, for a loss of over $1,660,000 (Amended Complaint ¶ 59).

Again, UBIQ failed to provide the consideration under the Settlement Agreement (Amended Complaint ¶ 61) and therefore, there is no release of the Defendants.

> 3. The Settlement Agreement Was Extinguished By Rescission.

Because UBIQ failed to provide the consideration under the Settlement Agreement, Plaintiffs provided written notice of rescission on October 21, 2015 (Amended Complaint ¶ 61).

California Civil Code Section 1688 states, "a contract is extinguished by its rescission. California Civil Code Section 1689 provides that a single party to a contract may rescind the contract (a) if consent to the contract was induced by fraud, (b) "If the consideration for the obligation of the rescinding party fails, in whole or in part, through the fault of the party as to whom he rescinds."

The Amended Complaint provides that (a) the Settlement was induced by Fraud (Amended Complaint ¶ 62), and (b) that UBIQ failed to provide the consideration (Amended Complaint ¶ 61). UBIQ never intended to provide the consideration for the settlement agreements, but induced Plaintiffs through fraud and misrepresentations to enter the settlement agreements (Amended Complaint ¶ 62). The fraudulent settlements were used to further Defendants' scheme by delaying lawsuits to continue to obtain additional capital investments from other unknowing investors (Amended Complaint ¶ 63).

As such, the Plaintiffs properly rescinded the Settlement Agreement under California Civil Code Section 1689 (Amended Complaint ¶ 61). Therefore, the contract and any release contained therein are extinguished by California Civil Code Section 1688.

Defendants argue under California Civil Code Section 1691(b) that Plaintiffs had to restore everything of value which Plaintiffs received under the Settlement Agreement. However, Plaintiffs did not receive anything of value from UBIQ under the Settlement Agreement, which is why it was rescinded – for failure to provide the consideration.

Again, Plaintiffs properly rescinded the Settlement Agreement, extinguishing it and the release.

### 4.   Defendants' Alleged Facts Should Not Be Considered For Its Motion To Dismiss.

The Court should not consider the alleged facts in Defendants' arguments, as they are outside of the Amended Complaint. The Defendants are asking this Court to rule on its Motion, not based on the law or the allegations of the Amended Complaint, but to use facts alleged by Defendants as a basis for the dismissal. This is improper, as the review should be limited to the contents of the complaint. *Clegg,* 18 F.3d at 754. The court must accept as true all factual allegations in the complaint as well as all reasonable inferences that may be drawn from such allegations." *LSO, Ltd.*, 205 F. 3d at 1150, n. 2.

For example, in order for the Court to determine if consideration was provided to validate the release or if consideration was returned for proper rescission, the Court would need to look outside the Amended Complaint and determine additional facts contrary to the pleadings.

Thus, the Court should not consider such alleged facts by Defendants and deny Defendants' Motion to Dismiss.

### C.   **Plaintiffs' Fraud Claims Are Alleged With Specificity.**

"A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken*, 6 F.3d 666, 671-72 (9th Cir. 1993).

1. <u>The Amended Complaint Identifies the Circumstances Constituting the Fraud</u>.

Plaintiffs' Amended Complaint identifies the circumstances constituting the fraud so that the Defendants can easily prepare an adequate answer. Plaintiffs' Amended Complaint provides details of Defendants' scheme of fraud and securities fraud in Paragraphs 19-36.

Defendants used the same scheme to defraud the Plaintiffs provided for in Paragraphs 43-60. On or about June 12, 2014, JACLIN as UBIQ's corporate counsel and on behalf of UBIQ, made material misrepresentations to Plaintiffs' representative Robert Wheat and to Troy Flowers regarding the UBIQ securities (Amended Complaint ¶ 43). Specifically, that if Plaintiffs purchased the UBIQ securities (a) that UBIQ would lift the restrictions of the UBIQ securities by September 27, 2014 (Amended Complaint ¶ 43), (b) that JACLIN would write a Rule 144 legal opinion letter to remove the restricted trading legend on September 27, 2014 (Amended Complaint ¶ 43), (c) that UBIQ would re-issue the certificates as free trading and that the UBIQ securities would be eligible to trade under Rule 144 all by September 27, 2014 (Amended Complaint ¶ 43), (d) that JACLIN would provide the legal services to Plaintiffs including writing the Rule 144 legal opinions (Amended Complaint ¶ 44 & 45),  and (e) that UBIQ had applied for a NASDAQ up listing, had met the requirements, and would become an obligatory reporting company and be up listed to the NASDAQ exchange (Amended Complaint ¶ 46). Such misrepresentations were made as part of Defendants' scheme to defraud Plaintiffs and artificially inflate the proceeds resultant from the purchase (Amended Complaint ¶ 48).

Plaintiffs purchased the UBIQ securities based on the representations made by UBIQ and JACLIN (Amended Complaint ¶ 47).

In furtherance of Defendants' scheme, JACLIN and Szaferman intentionally did not provide Rule 144 legal opinions to the Plaintiffs.  JACLIN

1  and Szaferman acted to prevent Plaintiffs from discovery of the fraudulent
2  scheme pretending to be attorney gatekeepers, while helping to perpetuate the
3  Defendants' fraud (Amended Complaint ¶ 51).

4      In furtherance of Defendants' scheme, UBIQ refused to register the
5  securities without a restrictive legend in violation of California Commercial Code
6  Section 8401 (Amended Complaint ¶ 55). Plaintiffs were unable to sell the UBIQ
7  securities, which resulted in damages (Amended Complaint ¶ 56).

8      On or about November 18, 2014, Wheat met with Carmichael and Garrison
9  at UBIQ's office in Irvine, California. At the meeting Carmichael informed
10 Plaintiffs that they would not free up the stock unless Plaintiffs made an
11 additional investment into UBIQ (Amended Complaint ¶ 57). Defendants'
12 scheme included illegally withholding securities in an effort to get them to make
13 further capital investments, as they did to the Plaintiffs (Amended Complaint ¶
14 58). As a direct result of Defendants' conduct, Plaintiffs lost over $1,660,000
15 (Amended Complaint ¶ 59).

16     There is simply no doubt that the Plaintiffs had met their burden to identify
17 the circumstances constituting the Defendants' fraud.

18     2.   The Amended Complaint's Allegations Are Pled With Specificity.

19     Plaintiffs' Amended Complaint pleads with specificity fraud and securities
20 fraud elements, including who, what, when, where and how. The Amended
21 Complaint provides:

22  (a) Who: JACLIN, on behalf of UBIQ, made material misrepresentations to
23 Plaintiffs' representative, Robert Wheat (Amended Complaint ¶ 43);

24 (b) What: made misrepresentations that (1) the restrictions on the UBIQ
25 securities would be lifted by September 27, 2014 (Amended Complaint ¶ 43), (2)
26 a Rule 144 Legal Opinion would be provided to remove the restrictive trading
27 legend on September 27, 2014 by JACLIN (Amended Complaint ¶¶ 43, 75, 94),
28 (3) the securities would be eligible to trade under Rule 144 by September 27,

11

2014 (Amended Complaint ¶ ¶ 43, 75, 94), (4) UBIQ would be making SEC filings to become an obligatory reporting company under the 1934 Securities Act and would be uplisted to the NASDAQ exchange (Amended Complaint ¶¶ 46, 75, 94), (5) UBIQ had applied for the up listing and had met the filing requirements (Amended Complaint ¶¶ 46, 75, 94), and (6) Plaintiffs had to use JACLIN to write the Rule 144 Legal Opinions and could not use independent counsel (Amended Complaint ¶ 44).

(c) When: On or about June 12, 2014 (Amended Complaint ¶ ¶ 43, 75, 94):

(d) Where and How: Via a phone call between JACLIN, Robert Wheat and Troy Flowers (Amended Complaint ¶ ¶ 42, 43, 75, 94).

(e) The representations were false (Amended Complaint ¶ ¶ 75, 94, 96, 97).

(f) Scienter: Defendants had knowledge and intended to defraud Plaintiffs and induce reliance (Amended Complaint ¶ ¶ 43, 60, 75, 94, 96, 97)

(g) Damages (Amended Complaint ¶ 59).

In addition, Plaintiffs' Amended Complaint also pleads with specificity additional securities fraud and illegal acts, as provided in Paragraphs 57-58 of the Amended Complaint.   Specifically, on or about November 18, 2014, Robert Wheat met with Carmichael and Garrison at UBIQ's office in Irvine, California (Amended Complaint ¶ 57). At the meeting Carmichael informed Plaintiffs that they would not free up the stock unless Plaintiffs made an additional investment into UBIQ (Amended Complaint ¶ 57). Defendants' scheme included illegally withholding securities in an effort to get them to make further capital investments, as they did to the Plaintiffs (Amended Complaint ¶ 58).

      a.    JACLIN was employed by UBIQ to assist Defendants in securities fraud.

Defendants falsely argue that there are no allegations that UBIQ employed or authorized JACLIN to make the misrepresentations or that the Defendants knew what JACLIN would say to Plaintiffs on June 12, 2014. The Amended

Complaint alleges that JACLIN was hired/employed by the UBIQ Defendants (Amended Complaint ¶ 21), to assist in soliciting the sale of unregistered securities, perpetuating securities fraud and conspiring in a market manipulation (Amended Complaint ¶ 22). In furtherance of the scheme of Defendants, JACLIN perpetuated securities fraud and assisted in soliciting the sale of unregistered securities to the Plaintiffs (Amended Complaint ¶¶ 43-60). JACLIN was hired and authorized by Defendants to make the misrepresentations of June 12, 2014 and the further acts of securities fraud thereafter.

b.   Defendants personally benefited from the fraud.

Defendants also falsely argue that Plaintiffs' allegations are not tethered to any charging allegation of securities fraud by which Plaintiffs were harmed or how Defendants were benefited from the fraud.

The Amended Complaint is clear; Plaintiffs were harmed in the amount over $1,660,000 (Amended Complaint ¶ 59) as a direct result of Defendants' conduct.

As it relates to Defendants' benefit, that is also clear; Defendants personally gained from their fraud (Amended Complaint ¶ 35). Sea Coast Advisors, Inc. ("Sea Coast") was an advisor to UBIQ and a registered beneficial owner of UBIQ securities (Amended Complaint ¶ 41). The UBIQ securities purchased by Plaintiffs came from Sea Coast (Amended Complaint ¶ 41). UBIQ used others, such as Sea Coast, to assist in their fraudulent scheme (Amended Complaint ¶ 36). UBIQ was able to artificially limit the supply of stock by controlling sales and purchase. In turn, the Defendants were able to sell their own securities at an artificially inflated price due to their scheme of controlling the supply and sale (Amended Complaint ¶¶ 26, 28). Further, Defendants were able to obtain more investors to purchase UBIQ securities as the supply was artificially limited and the price was artificially inflated (Amended Complaint ¶ 28), for the Defendants' personal gain (Amended Complaint ¶ 35), and then

Defendants looted the investments for their personal gain (Amended Complaint ¶ 40).

Additionally, securities fraud under Section 10(b) and Rule 10b-5 is applicable to the sale or purchase of any security, not just the offering made by the issuing company. Thus, Defendants' argument fails on its face.

### 3.   Plaintiffs Have Properly Pled Scienter and Particularity.

Defendants' Motion falsely argues that Plaintiffs failed to properly plead scienter and particularity related to the securities fraud claims. To plead scienter, the Plaintiffs need to state facts that raises a strong inference of deliberate recklessness. *In Re Silicon Graphics Inc. Secur. Litig.* 183 F3d 970, 984 (9th Cir. 1999). To plead particularity, the Plaintiffs need to provide a list of all relevant circumstances in great detail. *Id.* at 984.

Plaintiffs' Amended Complaint first lays the foundation and lists all relevant circumstances in great detail of Defendants' scheme of fraud and securities fraud in Paragraphs 24-36. The Defendants devised a plan to use UBIQ to solicit the sale of securities and obtain millions of dollars from unknowing investors (including the Plaintiffs) through the sale of unregistered securities by misrepresentations, fraud and market manipulation (Amended Complaint ¶ 24). This scheme/plan included (a) selling securities and siphoning out such investments for Defendants' personal gain (Amended Complaint ¶ 25), (b) manipulating the stock and artificially limiting the supply of UBIQ stock to inflate the stock price to be able to sell their own securities at a gain (Amended Complaint ¶ 26), (c) making material misrepresentations regarding the operation of UBIQ to gain additional investments (Amended Complaint ¶ 27), (d) making material misrepresentations about the ability for investors to sell the UBIQ stock under Rule 144 in order to get additional investments (Amended Complaint ¶ 28), (e) making material misrepresentations regarding being an obligatory reporting company under the Securities Act of 1934 to obtain more investments

(Amended Complaint ¶ 29), (f) issuing fraudulent press releases representing that UBIQ applied to uplist to the NASDAQ exchange to obtain more investments (Amended Complaint ¶ 30), (g) prohibiting investors from using legal counsel other than JACLIN and Szaferman to issue legal opinions to control and manipulate the distribution of the UBIQ securities (Amended Complaint ¶ 31), (h) intentionally not filing SEC required documents so that Defendants could manipulate and control the market by restricting securities sales when it benefited Defendants (Amended Complaint ¶ 32), (i) selectively deciding which and when investors would receive UBIQ stock certificates and using an illegal practice called Gypsy Swaps (Amended Complaint ¶ 33), (j) refusing to register UBIQ securities in violation of California Commercial Code Section 8401 to control and manipulate the sale of UBIQ securities (Amended Complaint ¶ 34), (k) allowing each and every Defendant to personally profit from the scheme through outrageous salaries, bonuses, stock options and other payouts from UBIQ (Amended Complaint ¶ 35), and (l) using others to assist in their plan and paying them out through UBIQ funds or securities (Amended Complaint ¶ 36).

Second, Plaintiffs' Amended Complaint provides all relevant facts in detail related to the specific fraud against Plaintiffs provided for in Paragraphs 43-60. On or about June 12, 2014, JACLIN, as UBIQ's corporate counsel and on behalf of UBIQ, made material misrepresentations to Plaintiffs' representative Robert Wheat and to Troy Flowers regarding the UBIQ securities (Amended Complaint ¶ 43). Specifically, that if Plaintiffs purchased the UBIQ securities (a) that UBIQ would lift the restrictions of the UBIQ securities by September 27, 2014 (Amended Complaint ¶ 43), (b) that JACLIN would write a Rule 144 legal opinion letter to remove the restricted trading legend on September 27, 2014 (Amended Complaint ¶ 43), (c) that UBIQ would re-issue the certificates as free trading and that the UBIQ securities would be eligible to trade under Rule 144 all by September 27, 2014 (Amended Complaint ¶ 43), (d) that JACLIN would

provide the legal services to Plaintiffs including writing the Rule 144 legal opinions (Amended Complaint ¶ 44 & 45),  and (e) that UBIQ had applied for a NASDAQ up listing, had met the requirements, and would become an obligatory reporting company and be up listed to the NASDAQ exchange (Amended Complaint ¶ 46). Such misrepresentations were made as part of Defendants' scheme to defraud Plaintiffs and artificially inflate the proceeds resultant from the purchase (Amended Complaint ¶ 48).

Plaintiffs purchased the UBIQ securities based on the representations made by UBIQ and JACLIN (Amended Complaint ¶ 47).

In furtherance of Defendants' scheme, JACLIN and Szaferman intentionally did not provide Rule 144 legal opinions to the Plaintiffs. JACLIN and Szaferman acted to prevent Plaintiffs from the discovery of the fraudulent scheme pretending to be attorney gatekeepers, while helping to perpetuate the Defendants' fraud (Amended Complaint ¶ 51).

In furtherance of Defendants' scheme, UBIQ refused to register the securities without a restrictive legend in violation of California Commercial Code Section 8401 (Amended Complaint ¶ 55). Plaintiffs were unable to sell the UBIQ securities, which resulted in damages (Amended Complaint ¶ 56).

On or about November 18, 2014, Wheat met with Carmichael and Garrison at UBIQ's office in Irvine, California. At the meeting Carmichael informed Plaintiffs that they would not free up the stock unless Plaintiffs made an additional investment into UBIQ (Amended Complaint ¶ 57). Defendants' scheme included illegally withholding securities in an effort to get them to make further capital investments, as they did to the Plaintiffs (Amended Complaint ¶ 58). As a direct result of Defendants' conduct, Plaintiffs lost over $1,660,000 (Amended Complaint ¶ 59).

Plaintiffs' Amended Complaint provides a detailed list of all relevant circumstances of Defendants' fraud. In doing so, the Amended Complaint states

facts that raise a strong inference of deliberate recklessness. In fact, the Amended Complaint provides facts that show intentional, knowledgeable and planned out fraud (Amended Complaint ¶¶ 43, 60, 75, 94, 96, 97), not just deliberate recklessness. Paragraphs 19-36, show intentional and knowledgeable fraud and at minimum, acted consciously and deliberately.

## IV.    CONCLUSION

Plaintiffs have alleged facts, which identify the circumstances constituting fraud so that the Defendants can prepare an adequate answer from the allegations. Plaintiffs' Amended Complaint provides specificity, particularity, scienter, and who, what, when, where and how. As such, Plaintiffs' Amended Complaint meets the specificity requirement of Rule 9(b) and the pleading requirements of securities fraud. Plaintiffs request that Defendants' Motion be denied. In the alternative, Plaintiffs request that this Court allow Plaintiffs to amend to correct any deficiencies found by the Court.

DATED: March 14, 2016          WEEKS NELSON


/s/ *Chandler G. Weeks*
Chandler G. Weeks
Attorney for Plaintiffs

## **CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the Court's CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).  Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

DATED:     March 14, 2016          WEEKS NELSON

/s/ *Chandler G. Weeks*
Chandler G. Weeks
Attorney for Plaintiffs