Heather L. Rosing, Bar No. 183986
Daniel S. Agle, Bar No. 251090
KLINEDINST PC
501 West Broadway, Suite 600
San Diego, California 92101
(619) 239-8131/FAX (619) 238-8707
hrosing@klinedinstlaw.com
dagle@klinedinstlaw.com

Attorneys for Defendants
GREGG JACLIN and SZAFERMAN,
LAKIND, BLUMSTEIN & BLADER,
P.C.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAY STRATEGIES, INC., a Nevada corporation; MAKAIWI & ASSOCIATES, INC., a Nevada corporation; JTS INVESTMENTS, INC., a California corporation; RESULT CORPORATION, a Nevada corporation,<br><br>Plaintiffs,<br><br>v.<br><br>UBIQUITY, INC., a Nevada corporation; CHRIS CARMICHAEL, an individual; CONNIE CARMICHAEL, an individual; BRENDEN GARRISON, an individual; HENRY BLESSLEY, an individual; NICHOLAS MITSAKOS, an individual; GREGG JACLIN, an individual; and SZAFERMAN, LAKIND, BLUMSTEIN & BLADER, P.C., a New Jersey professional corporation,<br><br>Defendants. | Case No.   3:15-CV-2720-H- DHB<br><br>**REPLY IN SUPPORT OF ATTORNEY DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**<br><br>Date:             March 28, 2016<br>Time:             10:30 a.m.<br>Courtroom:    15A<br>Judge:            Marilyn L. Huff<br>Magistrate Judge: David H. Bartick<br>Complaint Filed:  December 3, 2015<br>Trial Date:      None set |

///

///

///

I.  **INTRODUCTION**

Plaintiffs' written acknowledgment confirms that there was no attorney-client relationship with the Attorney Defendants; therefore, both the malpractice and breach of fiduciary duty claims fail. And rather than address specifically what the Attorney Defendants are alleged to have done regarding the fraud-based claims, Plaintiffs try to conflate Ubiquity's alleged conduct with that of the Attorney Defendants. But the conduct attributed to the Attorney Defendants is clearly not actionable. Therefore, the fraud-based claims also fail and the amended complaint should be dismissed as to the Attorney Defendants.

Further, because Plaintiffs have already amended the complaint once when faced with these same arguments, they have demonstrated that they are unable to overcome the deficiencies raised herein. Therefore, the Court should deny leave to amend the pleading as futile.

II. **ARGUMENT**

  A.  **The legal malpractice and breach of fiduciary duty claims fail because Plaintiffs' acknowledged in writing that there was no attorney-client relationship.**

  1.  **The Court should consider the exhibits when deciding this motion because they are referenced in the amended complaint and the claims against the Attorney Defendants depend upon them.**

Plaintiffs mistakenly believe that this Court cannot consider material they reference in the amended complaint and base their claims upon. But the law is clear that this Court can and should properly consider that material when deciding a Rule 12(b) motion. *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 206); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001); *In re Silicon Graphincs, Inc.*, 183 F.3d 970, 986 (9th Cir. 1999).

Here, the amended complaint references Exhibits D, E, F, and G and the claims asserted against the Attorney Defendants depend upon those materials. Specifically, Plaintiffs allege that they provided the certificates on October 2, 2014 to be issued without the restrictive legend. ¶ 54.[1] And each Plaintiff sent the documents referenced in paragraph 54 to the Attorney Defendants on October 2, 2014, which included the certificates specifically referenced in paragraph 54. Those documents are critical to their claims, because Plaintiffs assert that as of that date they provided the necessary information, the Attorney Defendants and Ubiquity should have provided Plaintiffs with certificates that were free of the restrictive legend. Not surprisingly, it is that same October 2, 2014 date—when they sent the documents—which marks the starting point of Plaintiffs' damages claim (i.e. they claim that the difference between the stock price on October 2, 2014 and the date they sold the stock as their damage). ¶ 59.

Plaintiffs' argument that the Rule 144 Representation Letters are irrelevant to their claims because the Attorney Defendants "already had all facts necessary to write the legal opinions without the [Rule 144 Representation Letters]" (Dkt. No. 15, at 8:21-9:3) is not only unsupported by the allegations of the amended complaint and judicially noticeable documents, it is borderline nonsensical. Notably, Plaintiffs cite no authority, persuasive or otherwise, to support their argument.

The opinion letters expressly state that the Attorney Defendants reviewed the Rule 144 Representation Letters provided by Plaintiffs, the Stock Purchase Agreement related to the Plaintiffs' shares, and a copy of the share certificates held and provided by Plaintiffs and that the Attorney Defendants wrote the opinion letters "in reliance" on the information provided to the Attorney Defendants by Plaintiffs—the same information that was provided by Plaintiffs on October 2,

---

[1] As in the moving papers, all references to ¶ refer to the amended complaint filed in this action, unless otherwise indicated.

2014.[2]  *See* ¶ 54; Exs. H, I, J, and K.  Furthermore, Plaintiffs purchased their shares from third parties, not Ubiquity.  ¶ 41.  Therefore, the Attorney Defendants would not have had all of the details related to those transactions—as the amended complaint tacitly acknowledges.

The final opinion letters also confirm that the Attorney Defendants were providing the letters in reliance upon the representations made by the Plaintiffs in the Rule 144 Representation Letters.  Exs. H, I, J, and K.[3]

Plaintiffs also failed to analyze why Exhibits H, I, J, and K should not be considered by this Court.  Dkt. No. 15, at 9:6-8.  That omission is not surprising since the amended complaint references those documents in paragraph 50 of and they are material to the claims against the Attorney Defendants.[4]

### 2. The written acknowledgment that the Attorney Defendants did not represent Plaintiffs was neither ambiguous nor confusing.

Recognizing that the acknowledgments in the Rule 144 Representation Letters are dispositive of their malpractice and breach of fiduciary duty claims, Plaintiffs argue that their written acknowledgement that the Attorney Defendants did not represent them is ambiguous and confusing because "the signer is referred to as 'I' or 'you,' and never as 'seller'."  Dkt. No. 15, at 9:19-23.  Nonsense.  The

---

[2] The opinion letters also reference the representation letter received from Wilson-Davis, the Plaintiffs' Broker for the proposed sale, which is additional information that Plaintiffs had to provide to the Attorney Defendants, but did not provide until after October 2, 2014.

[3] It is also disingenuous for Plaintiffs to now try to separate Mr. Jaclin and his law firm in arguing that the written acknowledgment did not specifically reference Mr. Jaclin.  The Court would have to set aside common sense to accept that argument because (1) the entire amended complaint groups Mr. Jaclin and his law firm together as one, and (2) the amended complaint clearly refers to Szaferman Lakind as "his law firm."  ¶ 22.  Thus, there are no circumstances where there could be an attorney-client relationship with Mr. Jaclin, but no relationship with his firm.

[4] Rather than repeat what has already been briefed, the Attorney Defendants refer the Court to the Request for Judicial Notice filed in support of this motion which addresses why Exhibits H, I, J, and K are properly before this Court.  Dkt. No. 13-3, at 4:19-5:3.

1   Rule 144 Representation Letter is a short, three page document that clearly states
2   in the first paragraph that "the undersigned" is the "Seller" and that "Seller hereby
3   represents, warrants and confirms to [the Attorney Defendants] as follows." Exs.
4   D, E, F, and G.  Therefore, it is disingenuous for Plaintiffs to say the letter never
5   refers to the signer as "seller."  Additionally, the acknowledgement is neither
6   buried nor unclear—it is written in plain English and is set apart as its own
7   numbered point in the three-page letter.  Exs. D, E, F, and G.

8   Because each Plaintiff clearly acknowledged that the Attorney Defendants
9   did not represent them, this Court can and should disregard the allegations to the
10  contrary in the amended complaint. *See e.g. Hal Roach Studios, Inc. v. Richard
11  Feiner & Co.*, 896 F.2d 1542, 1555 (9th Cir. 1990)(courts should disregard
12  allegations that are inconsistent with incorporated documents).

### 3. The written acknowledgment that the Attorney Defendants did not represent Plaintiffs is dispositive of the legal malpractice and breach of fiduciary duty claims.

16  Plaintiffs' argument that the October 2, 2014 written acknowledgement does
17  not negate the attorney-client relationship is also misplaced.  Dkt. No. 15, at 9:9-
18  19.  Despite the fact that the allegations contradicting the written
19  acknowledgement should be ignored, the allegations of the amended complaint
20  show that the services at issue could not have been provided to Plaintiffs before
21  October 2, 2014—therefore, there was no attorney-client relationship in the June
22  12, 2014 timeframe.  Specifically, the amended complaint alleges that Mr. Jaclin
23  told Mr. Wheat that Plaintiffs "would be required to hire [the Attorney Defendants]
24  for legal services to write Legal Opinions."  ¶ 44.  That statement is about a future
25  event, services that are to be provided in the future, not in June 2014.  And on the
26  alleged June 12, 2014 phone call, Mr. Jaclin participated as counsel for Ubiquity,
27  not as counsel for Plaintiffs.  ¶ 43.  Then, after Mr. Jaclin allegedly said Plaintiffs
28  would have to hire his firm to write the letters, Plaintiffs allege that Mr. Wheat

"agreed to use [the Attorney Defendants] to write the Rule 144 Legal Opinion Letters"—something that could not occur until more than three months later.[5] ¶ 45.  Thus, if the Court were to consider the allegations of the amended complaint in combination with the Rule 144 Representation Letters, even if there was a prior agreement to later engage the Attorney Defendants to provide the opinion letters, upon providing the information necessary to prepare the opinion letters, each and every Plaintiff acknowledged in writing that the Attorney Defendants did not represent them.[6]

But even if this Court concludes that Exhibits D, E, F, G, H, I, J, and K cannot be considered under Rule 12(b), the written confirmation by each Plaintiff that the Attorney Defendants do not represent them is still dispositive of their claims.  Therefore, under that scenario, this Court could convert the portion of this 12(b) motion related to the legal malpractice and breach of fiduciary duty claims into a Rule 56 motion and consider the exhibits in dismissing the claims.  Rule 12(d).[7]

///

///

---

[5] The Court will also note that there are no allegations concerning any communication or acts in furtherance of the alleged attorney-client relationship between June 12, 2014 and October 2, 2014.  The lack of any such correspondence or acts weighs in favor of this Court disregarding the allegations that directly contradict the written acknowledgements made on October 2, 2014.

[6] In addition to acknowledging that there was no attorney-client relationship, each Plaintiff also acknowledged that "any payment made by or on behalf of [Plaintiffs] for the opinion letter is an administrative fee and does not establish an attorney-client relationship between [Plaintiffs] and [the Attorney Defendants.]"  Exs. D, E, F, and G.  Such an acknowledgement renders Plaintiffs' argument that payment to the Attorney Defendants established an attorney-client relationship unavailing.

[7] Plaintiffs' representation to this Court that there was an attorney-client relationship between them and the Attorney Defendants is both misleading and disingenuous.  Therefore, it would be completely proper for this Court to sanction both Plaintiffs and their counsel under Federal Rule of Civil Procedure, Rule 11(b)(3).  The legal malpractice and breach of fiduciary duty claims could not have been asserted in good faith—this issue was already highlighted for Plaintiffs in the Attorney Defendants' motion to dismiss the original complaint (before they filed their amended complaint).

### B. Plaintiffs have not alleged actionable fraud against the Attorney Defendants.

#### 1. The majority of the alleged representations by Mr. Jaclin relate to future actions by a third party—Ubiquity—which cannot be actionable for fraud.

Plaintiffs argue that Mr. Jaclin's alleged representations made on June 12, 2014, "are not statements as to future actions by some third party." Dkt. No. 15, at 10:21-22. Yet in the very same paragraph, Plaintiffs detail that the representations were: (a) that Ubiquity would lift restrictions by a future date;[8] (c) that Ubiquity would re-issue the securities as free trading by a future date; (d) that Ubiquity would allow the securities to be free trading by a future date; and (e) that Ubiquity would be making SEC filings to be up-listed. Dkt. No. 15, at 10:23-11:5. All of those explicitly relate to future actions by someone other than the Attorney Defendants. And because the Attorney Defendants were merely agents of Ubiquity, they had no ability to control Ubiquity's actions. Therefore, because the above referenced statements are all "statements as to future action by [a] third party," they are "deemed opinions, and not actionable fraud." *Borba v. Thomas*, 70 Cal.App.3d 144, 152 (1977).

#### 2. Mr. Jaclin's alleged statements about Ubiquity having applied for uplisting are not alleged to have been false and do not support the fraud claims.

Nowhere in the amended complaint do Plaintiffs allege that Ubiquity did not apply to NASDAQ for uplisting. Therefore, Mr. Jaclin's alleged statement that Ubiquity had applied for uplisting cannot be a basis for the fraud claims.

Instead, Plaintiffs argue that despite the fact that Ubiquity had filed for uplisting, Mr. Jaclin should have known that Ubiquity would not qualify for

---

[8] Only item (b) listed by Plaintiffs relates to any action on the part of the Attorney Defendants. Therefore, that item is addressed separately below.

1  uplisting because it had not yet filed additional paperwork to make Ubiquity an
2  obligatory reporting company.  Dkt. No. 15, at 11:13-20, 13:7-11.  But Plaintiffs
3  own allegations about what Mr. Jaclin said belie their argument.  Specifically,
4  Plaintiffs allege that Mr. Jaclin "represented on the phone call that UBIQ **would be**
5  **making SEC filings to become an obligatory reporting company**." ¶ 46.
6  Therefore, Plaintiffs' own allegations illustrate the Mr. Jaclin did not state that
7  Ubiquity had already made all of the required filings.  Rather, Mr. Jaclin allegedly
8  confirmed that there were additional future filings that Ubiquity needed to take to
9  be uplisted to NASDAQ.  Therefore, Mr. Jaclin's alleged statements about
10 Ubiquity filing for uplisting cannot form the basis of the fraud claims.

### 3. Mr. Jaclin's alleged statement about providing the opinion letters by September 27, 2014 cannot support a fraud claim because Plaintiffs' own conduct rendered it impossible for the future predicted events from occurring.

15 The only remaining allegation of fraud attributed to the Attorney Defendants
16 is that Mr. Jaclin allegedly promised to provide the opinion letter by September 27,
17 2014.  But as set forth above and in the moving papers, Plaintiffs' did not provide
18 the information the Attorney Defendants needed and would rely upon in issuing
19 the opinion letters until after September 27, 2014.  The Attorney Defendants
20 cannot be found responsible for not providing the opinion letters by September 27,
21 2014 when it was Plaintiffs that made it impossible for the opinion letters to be
22 issued by that date by failing to provide the necessary information.  Therefore,
23 Plaintiffs could not have reasonably relied on the Attorney Defendants to provide
24 the opinions by September 27, 2014, and the fraud claims necessarily fail.

### C. Plaintiffs have not established that the crime-fraud exception applies in this case.

27 Notably, Plaintiffs do not contest that *McDermott* would preclude this case
28 from proceeding unless there was no duty of confidentiality owed to Ubiquity.

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

Silently acknowledging this, Plaintiffs instead argue that the crime-fraud exception works to overcome the need for dismissal under *McDermott*.

But the allegations of the amended complaint, all made on information and belief, that the Attorney Defendants were hired to assist with the securities fraud scheme, are insufficient for this Court to find that the crime-fraud exception applies to the attorney-client communications between the Attorney Defendants and Ubiquity. *See Dickerson v. Superior Court*, 135 Cal. App. 3d 93, 100 (1982).

Furthermore, the allegations related to the general fraudulent scheme center almost entirely around that acts of Ubiquity and not the acts of the Attorney Defendants.[9] Paragraphs 16-20, 24-30, and 32-40, as well as Plaintiffs' brief filed in opposition to this motion, illustrate that the alleged fraud and manipulation, if any, was caused by Ubiquity, not the Attorney Defendants.

Further, the information and belief allegations related to the alleged fraudulent scheme are almost all based on a scenario under which Ubiquity is the seller of the stock—circumstances distinct from the Plaintiffs' claims. Plaintiffs claim that the general fraudulent scheme relates to Ubiquity selling its shares at inflated prices, and then siphoning the proceeds from the stock sale into the pockets of Ubiquity's directors and officers. But here, Plaintiffs purchased stock from third parties, meaning that Ubiquity received no benefit from that sale—the shares were already outstanding—and therefore, there was nothing for the Ubiquity insiders to siphon from the company related to Plaintiffs' shares. Therefore, the sale of the shares from the third parties to Plaintiffs is completely different from the fraudulent scheme Plaintiffs' generally allege on information and belief.[10]

---

[9] The Attorney Defendants are not conceding that Ubiquity actually committed fraud against anyone. But the amended complaint alleges that the scheme was that of Ubiquity, not the Attorney Defendants.

[10] Additionally, the facts alleged in the amended complaint related to the Plaintiffs' purchase of Ubiquity shares are not even remotely close to a Gyspy Swap. A Gyspy Swap is an improper transaction where the participants illicitly funnel unrestricted shares to third parties in exchange for restricted stock. Here, Plaintiffs purchased restricted shares, not unrestricted shares. For discussion of

The alleged fraudulent scheme related to Plaintiffs, is based on the allegation that Ubiquity met with Plaintiffs and refused to issue unrestricted shares of its stock under Rule 144 unless Plaintiffs purchased additional shares from Ubiquity. ¶¶ 55-60.[11]  The Attorney Defendants are not alleged to have been involved with that meeting.  Plaintiffs also claim that Ubiquity limited the supply of its stock to artificially inflate the price. ¶ 26.  But because Plaintiffs claim that it was Ubiquity who refused to issue the unrestricted shares (both to obtain additional investments and to keep the share price high), the allegation that there was a delay in getting the opinion letters is meaningless since Plaintiffs could not sell their shares until Ubiquity actually issued unrestricted shares of its stock—something that the Attorney Defendants had no control over.

Given that the Attorney Defendants were not necessary for Ubiquity to perpetrate the alleged fraud, the crime-fraud exception should never apply to this case and, therefore, the claims should be dismissed based on the public policy set forth in *McDermott, Will & Emery v. Superior Court*, 83 Cal.App.4th 378 (2000).[12]

**D.  Plaintiffs have not alleged a plausible fraudulent scheme on the part of the Attorney Defendants.**

In a futile attempt to convince this Court that they have alleged a plausible fraudulent scheme on the part of the Attorney Defendants, Plaintiffs point to the general fraudulent scheme set forth in paragraphs 19-36 of the amended complaint. Dkt. No. 15, at 5-6.  However, as explained above, the general fraudulent scheme,

---

Gypsy Swaps see John P. Cleary, *Beware of "Gypsy Swaps" and Other Unlawful Transactions Involving Free-Trading Stock*, Procopio, Cory, Hargreaves & Savitch LLP (September 23, 2014), available at http://www.procopio.com/news/beware-of-gypsy-swaps-and-other-unlawful-transactions-involving-free-trading-stock

[11] Again, because the shares had long since been issued, Ubiquity could not benefit from the sale of its shares by third party holders to Plaintiffs.

[12] Additionally, Plaintiffs cannot invade the attorney-client privilege between Ubiquity and the Attorney Defendants by merely claiming that they too had an attorney-client relationship with the Attorney Defendants.  First, as demonstrated above, there was no attorney-client relationship with Plaintiffs. Second, even if there were, the privilege with Plaintiffs would be independent of any privilege with Ubiquity.

alleged on information and belief, is completely different than what Plaintiffs claim happened to them.

Furthermore, it is implausible that the Attorney Defendants would participate in a scheme wherein Ubiquity would delay the issuance of unrestricted shares in order for Ubiquity to sell additional shares to Plaintiffs, all for $3,000 in administrative fees; and there is no allegation that the Attorney Defendants received or expected to receive anything beyond $3,000 in administrative fees. The reasoning found in *Reiger v. PriceWaterhouse Coopers LLP*, 117 F. Supp. 2d 1003, 1007 (S.D. Cal. 2000) supports the fact that it is irrational to conclude that a professional would risk reputation where there is no economic incentive to participate in the fraud of a single client. The de minimis fees are simply not enough to adequately allege fraudulent intent.[13]

## III.  CONCLUSION

For the foregoing reasons, as well as those set forth in the moving papers, the Attorney Defendants respectfully request that this Court grant their motion to dismiss, without leave to amend.

KLINEDINST PC

DATED: March 21, 2016     By:  s/ Daniel S Agle
                               Daniel S. Agle
                               Attorneys for Defendants
                               GREGG JACLIN and SZAFERMAN,
                               LAKIND, BLUMSTEIN & BLADER,
                               P.C.

---

[13] Although Plaintiffs claim that Mr. Jaclin's prior firm was shut down by the SEC for securities fraud, a review of the SEC's enforcement actions shows that it has never taken any position related to Mr. Jaclin's former firm. That his former firm had clients who were pursued by the SEC for securities fraud does not lead to the conclusion that the former firm was involved in the fraud. For if it were, there would certainly have also been an SEC enforcement action against the old firm. Furthermore, that the old firm was named a defendant in a prior lawsuit and paid a settlement to resolve the claim also does not lead to the conclusion that the firm had committed any securities fraud.